## UNITED STATES DISTRICT COURT
### DISTRICT OF HAWAII

| | |
|---|---|
| GERALDO W. SCATENA,<br><br>                Plaintiffs,<br><br>    -vs.-<br><br><br>BOEHRINGER INGELHEIM PHARMACEUTICALS, INC., a Delaware corporation; PFIZER INC., a Delaware corporation; GLAXOSMITHKLINE LLC, a Delaware company; COSTCO WHOLESALE CORPORATION, a Washington corporation; RITE AID CORPORATION, a Pennsylvania corporation,<br><br>                Defendants. | CASE NO.<br><br>**NOTICE OF REMOVAL OF ACTION PURSUANT TO 28 U.S.C. §§ 1332, 1441, and 1446** |

Pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, Defendant Boehringer Ingelheim Pharmaceuticals, Inc. ("BI" or "Removing Defendant") hereby gives notice of removal of this action, *Scatena. v. Boehringer Ingelheim Pharmaceuticals, Inc., et al*., No. 3CCV-22-0000355, from the Circuit Court of the Third Circuit of Hawaii to the United States District Court for the District of Hawaii. As grounds for removal, Removing Defendant states as follows:

## INTRODUCTION

1.    This action is one of many individual lawsuits filed against manufacturers, distributors, and retailers of Zantac (ranitidine) relating to cancers allegedly caused by the drug. On February 6, 2020, the Judicial Panel on Multidistrict Litigation ("JPML") created a Multidistrict Litigation ("MDL") in the Southern District of Florida for pretrial coordination of cases like this one—*i.e.*, cases "in which plaintiffs allege that they developed cancer as a result of NDMA [N-Nitrosodimethylamine] formed from Zantac." *In re Zantac (Ranitidine) Prods. Liab.*

*Litig.*, 437 F. Supp. 3d 1368, 1369 (J.P.M.L. 2020).  The JPML found that centralizing these cases for pretrial purposes "will eliminate duplicative discovery; prevent inconsistent rulings . . . and conserve the resources of the parties, their counsel, and the judiciary."  *Id.*  To date, well over 2,000 actions have been filed in or transferred to the Zantac MDL.

2.      None of the Defendants named in this ranitidine-related case is a citizen of Hawaii.

3.      Thus, the basis for removal here is materially identical to the basis for federal jurisdiction over dozens of substantially similar ranitidine-related cases previously transferred to the MDL: there is complete diversity of citizenship between Plaintiff and Defendants.

## BACKGROUND

4.      On October 28, 2022, Plaintiff Geraldo W. Scatena filed this Complaint in the Circuit Court of the Third Circuit of Hawaii against various manufacturers and/or distributors of Zantac.  *See* Compl. ¶¶ 7-12.  The thrust of this Complaint—like others in the MDL—is that Plaintiff ingested Zantac and, as a direct and proximate result, developed cancer (in this case, kidney cancer).  *Id.* ¶ 5.  A copy of the Complaint is attached as **Exhibit 1**.

5.      This is not the first Zantac-related complaint that Plaintiff has filed against these same Defendants.  On May 29, 2020, Plaintiff filed a nearly identical complaint against Defendants in the United States District Court for the District of Hawaii, alleging—as he alleges here—that he developed kidney cancer as a result of his ingestion of Zantac.  *See Scatena v. Boehringer Ingelheim Pharmaceuticals, Inc., et al.*, No. 1:20-cv-00251, ECF. No. 1 (**Exhibit 2**).    That case was transferred to the Zantac MDL on June 23, 2020.  *Id.* ECF. No. 12.  On May 11, 2022, Plaintiff filed an amended complaint in the Zantac MDL, naming the same Defendants.  *Id*. ECF No. 16 (**Exhibit 3**).  The amended complaint noted that jurisdiction is proper in the United States District Court for the District Court of Hawaii because there is diversity of citizenship.  *Id*. at 3.  Plaintiff's

case in the Zantac MDL remains pending. *See Scatena v. Boehringer Ingelheim Pharmaceuticals, Inc., et al.*, No. 9:20-cv-80986 (S.D. Fla.).

6.    On October 28, 2022, Plaintiff filed the instant Complaint in the Circuit Court for the Third Circuit of Hawaii, presumably because the type of cancer that Plaintiff alleges he developed (kidney cancer) is not one of the cancers for which Plaintiffs' Leadership Counsel provided general causation reports in the MDL. *See In re Zantac (Ranitidine) Prods. Liab. Litig.*, No. 9:20-cv-2924 (S.D. Fla.), ECF No. 5147.

7.    As Plaintiff acknowledged in both his federal court complaints and the Complaint he filed on October 28, 2022 in the Circuit Court for the Third Circuit of Hawaii, none of the Defendants is a citizen of Hawaii. Compl. ¶¶ 7-12; **Exhibit 2** ¶ 13 ("This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332. There is complete diversity of citizenship between the parties. In addition, Plaintiff seeks damages in excess of $75,000, exclusive of interest and costs."); **Exhibit 3** ¶ 7 (stating that jurisdiction was proper in the United States District Court for the District of Hawaii because of "diversity of citizenship").

8.    Pursuant to 28 U.S.C. § 1446(a), copies of the state court docket sheet, all process, pleadings, orders, and other documents on file with the Circuit Court for the Third Circuit of Hawaii are attached hereto as **Exhibit 4**.

## **VENUE AND JURISDICTION**

9.    Venue is proper in this Court pursuant to 28 U.S.C. §§ 91, 1391, 1441(a), and 1446(a), because the Circuit Court of the Third Circuit of Hawaii, where the Complaint was filed, is a state court within the District of Hawaii.

10.    This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a), because (1) there is complete diversity of citizenship between Plaintiff and all Defendants; (2) the amount-

in-controversy exceeds $75,000, exclusive of interests and costs; and (3) all other requirements for removal have been satisfied.

## BASIS OF REMOVAL

**I.    There Is Complete Diversity of Citizenship Between Plaintiff and All Defendants.**

11.    There is complete diversity of citizenship here because Plaintiff is a citizen of Hawaii, and all Defendants are citizens of states other than Hawaii.

12.    For purposes of diversity jurisdiction, a corporation is "a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1). A limited liability company is a citizen of every state in which its members are citizens. *Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006).

13.    Plaintiff resides in Kailua-Kona, Hawaii, and is a citizen of Hawaii and not of any other state. Compl. ¶ 6.

14.    Defendant Boehringer Ingelheim Pharmaceuticals, Inc. is a corporation organized under the laws of Delaware with its principal place of business in Ridgefield, Connecticut. *Id.* ¶ 7. BI is, therefore, a citizen of Delaware and Connecticut.

15.    Defendant Pfizer is a corporation organized under the laws of Delaware with its principal place of business in New York. *Id.* ¶ 9. Pfizer is, therefore, a citizen of Delaware and New York.

16.    Defendant GlaxoSmithKline LLC is a limited liability company. GlaxoSmithKline LLC's sole member is GlaxoSmithKline Holdings (Americas) Inc., a corporation organized under the laws of Delaware with its principal place of business in Wilmington, Delaware. *See* Attachment to Corp. Disclosure Statement, *In re Zantac (Ranitidine) Prods. Liab. Litig*, MDL No.

2924, Dkt. 43-1; *Johnson v. SmithKline Beecham Corp.*, 724 F.3d 337, 360 (3d Cir. 2013). GlaxoSmithKline LLC is, therefore, a citizen of Delaware.

17.    Defendant Costco Wholesale Corporation ("Costco") is a corporation organized under the laws of Washington with its principal place of business in Washington. *Id.* ¶ 11. Costco is, therefore, a citizen of Washington.

18.    Defendant Rite Aid Corporation ("Rite Aid") is a corporation organized under the laws of Delaware with its principal place of business in Pennsylvania.[1] *Id.* ¶ 12. Rite Aid is, therefore, a citizen of Delaware and Pennsylvania.

19.    Because Plaintiff is a citizen of Hawaii and all Defendants are citizens of states other than Hawaii, complete diversity exists. *See* 28 U.S.C. § 1332(a).

## II.    The Amount-in-Controversy Exceeds $75,000.

20.    Plaintiff's claims satisfy the amount-in-controversy requirement set forth in 28 U.S.C. § 1332(a).

21.    "[A] defendant's notice of removal need only include a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014).

22.    Courts have found that allegations of serious injury in products liability actions, such as those Plaintiff makes here, support an inference that the amount-in-controversy requirement has been met. *See Moore v. CVS Health Corp.*, No. EDCV 17-888 JGB, 2017 WL 2999021, at *2 (C.D. Cal. July 14, 2017) (finding the amount-in-controversy requirement was met where plaintiff sought damages for serious heart issues and respiratory problems resulting in

---

[1] Plaintiff incorrectly alleges that Rite Aid is a Pennsylvania corporation. Even if the Court were to view Plaintiff's incorrect allegations of citizenship as true, there is still diversity of citizenship between Plaintiff and Rite Aid.

emergency care and multiple hospital stays); *Hammarlund v. C.R. Bard, Inc.*, No. 215CV05506SVWJEM, 2015 WL 5826780, at *2 (C.D. Cal. Oct. 2, 2015) ("[B]ased on Plaintiff's allegations of a recurred umbilical hernia, small bowel obstruction, kidney damage, required surgery, permanent scarring, a four-day hospital stay, 'severe and permanent bodily injuries,' as well as 'significant mental and physical pain and suffering,' the Court finds it is still more likely than not that the amount in controversy exceeds $75,000."); *Mullaney v. Endogastric Sols. Inc.*, No. 11-62056-CIV, 2011 WL 4975904, at *2 (S.D. Fla. Oct. 19, 2011) (inferring that amount-in-controversy requirement was met where plaintiff alleged that he underwent "surgical intervention that required additional life saving medical treatment" and suffered "serious, permanent and disabling injuries"); *Campbell v. Bridgestone/Firestone, Inc.*, No. CIVF051499-FVSDLB, 2006 WL 707291, at *2 (E.D. Cal. Mar. 17, 2006) (holding that it was apparent from complaint that the amount-in-controversy requirement was met where plaintiffs asserted strict products liability, negligence, and breach of warranty claims against multiple defendants and sought compensatory damages, hospital and medical expenses, general damages, and loss of earning capacity).

23.    Here, it is apparent from the face of the Complaint that the amount-in-controversy exceeds $75,000.  The Complaint alleges that as a result of Plaintiff's use of Zantac, he developed kidney cancer and suffered "great mental anguish."  *See* Compl. ¶¶ 17, 32, 46–48, 59–60, 72–73, 87–88.  Plaintiff also allegedly sustained economic loss, including loss of income and loss of earning capacity.  *See id.* ¶¶ 33, 48, 61, 74, 89.  And Plaintiff seeks several categories of damages, including compensatory, exemplary, and punitive damages.  *See id.* at 24.  Indeed, in another Zantac case in which the plaintiff similarly claimed cancer as an injury, a federal court in the District of Nevada denied a motion to remand where the amount-in-controversy was not alleged,

finding that the requirement was satisfied on the face of the complaint by the nature of the injury. *See Brooks v. Sanofi S.A.*, No. 2:20-cv-565-JCM-EJY, 2020 WL 1847682, at *3-4 (D. Nev. Apr. 13, 2020).

24.     Further, Plaintiff himself has previously alleged that the amount-in-controversy requirement is satisfied.  In the near-identical complaint that Plaintiff filed in the United States District Court for the District of Hawaii on May 29, 2020, Plaintiff alleged damages in excess of $75,000.  *See* Exhibit 2 ¶ 13 ("This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332. There is complete diversity of citizenship between the parties.  In addition, Plaintiff seeks damages in excess of $75,000, exclusive of interest and costs.").  That complaint asserted the same causes of action that Plaintiff asserts here and named the same Defendants.  *Compare* Ex. 1 ¶¶ 23–92 *with* Ex. 2 ¶¶ 23–92.

25.     Finally, in the hundreds of personal injury cases pending in the Zantac MDL, each plaintiff either expressly claims damages in excess of $75,000 or has impliedly done so by filing a lawsuit in federal court and invoking federal diversity jurisdiction.  Numerous plaintiffs in these cases allege that they have been diagnosed with kidney cancer, the same type of cancer that Plaintiff claims here.  *See, e.g.*, *Poindexter v. Pfizer Inc. et al.*, No. 21-CV-81886 (S.D. Fla.); *Marti v. Boehringer Ingelheim Pharm., Inc.*, No. 21-CV-81746 (S.D. Fla.).  Although the Removing Defendant denies that Plaintiff is entitled to any damages, like those cases, this case meets the requirements for federal diversity jurisdiction.

### III.     All Other Removal Requirements Are Satisfied.

26.     The Notice of Removal is timely and properly filed pursuant to 28 U.S.C. § 1446(b).

27.     Defendants Pfizer and Costco were served with the Complaint on March 23, 2023. Defendants BI, GSK, and Rite Aid have not yet been served with the Complaint.

28.     Removal pursuant to 28 U.S.C. § 1441(a) requires that "all defendants who have been properly joined and served must join in or consent to the removal of the action."  28 U.S.C. § 1446(b)(2)(A).

29.     Though Defendants BI, GSK, and Rite Aid have not yet been served, all Defendants nonetheless either join in or consent to this removal.

30.     Removing Defendant is providing Plaintiff with written notice of the filing of this Notice of Removal, as required by 28 U.S.C. § 1446(d).

31.     Pursuant to 28 U.S.C. § 1446(d), Removing Defendant is filing a copy of this Notice of Removal with the Circuit Court of the Third Circuit of Hawaii.

32.     Pursuant to 28 U.S.C. § 1446(a), copies of the state court docket sheet, all process, pleadings, orders, and other documents on file with the Circuit Court of the Third Circuit of Hawaii are attached hereto as **Exhibit 4**.

33.     By filing this Notice of Removal, Removing Defendant does not waive any defense that may be available to it and reserves all such defenses, including but not limited to those related to service of process and lack of personal jurisdiction.  If any question arises regarding the propriety of the removal to this Court, Removing Defendant requests the opportunity to present a brief oral argument in support of their position that this case has been properly removed.

<u>**CONCLUSION**</u>

WHEREFORE, Removing Defendant gives notice that the matter bearing Case No. 3CCV-22-0000355, pending in the Circuit Court of the Third Circuit of Hawaii, is removed to the United States District Court for the District of Hawaii, and requests that this Court retain jurisdiction for all further proceedings in this matter.

Dated:  April 13, 2023

Respectfully submitted,

By: */s/ Philip R. Green*
Philip R. Green
Hawaii Bar No.:  011632
KING & SPALDING LLP
1180 Peachtree Street, N.E., Suite 1600
Atlanta, GA  30309
Telephone:  (404) 572-4600
Facsimile:  (404) 572-5136
pgreen@kslaw.com

*Attorney for Defendant Boehringer Ingelheim Pharmaceuticals, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on April 13, 2023, I served a true and correct copy of the foregoing via electronic and First Class mail on the following counsel of record:

Michael F. O'Connor
OGAWA, LAU, NAKAMURA & JEW
400 Broadhollow Road, Suite 305
Suite 600, Richards Building
707 Richards Street
Honolulu, HI 96813
(808) 533-3999
mfoconor@ollon.com

*Attorney for Plaintiff*

By: *Phillip R. Green*
Phillip R. Green
Hawaii Bar No. 11632
KING & SPALDING LLP
1180 Peachtree Street, Suite 1600
Atlanta, GA 30309-3521
Telephone: (404) 572-2728
Facsimile: (404) 572-5100
Email:pgreen@kslaw.com

*Attorney for Defendant Boehringer Ingelheim Pharmaceuticals, Inc.*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF HAWAII**

| | |
|---|---|
| GERALDO W. SCATENA,<br><br>               Plaintiffs,<br><br>   -vs.-<br><br><br>BOEHRINGER INGELHEIM PHARMACEUTICALS, INC., a Delaware corporation; PFIZER INC., a Delaware corporation; GLAXOSMITHKLINE LLC, a Delaware company; COSTCO WHOLESALE CORPORATION, a Washington corporation; RITE AID CORPORATION, a Pennsylvania corporation,<br><br>           Defendants. | CASE NO.<br><br>**DECLARATION OF PHILIP R. GREEN** |

<u>**DECLARATION OF PHILIP R. GREEN**</u>

I, Philip R. Green, declare as follows:

1. I am a partner with the law firm King & Spalding LLP and am licensed to practice law in the State of Hawaii.  I am also admitted to the bar of this Court.  I represent Defendant Boehringer Ingelheim Pharmaceuticals, Inc. in the instant action.

2. I am competent to testify as to the matters set forth herein and, unless otherwise indicated, make this declaration based upon my own personal information and knowledge.

3. This declaration is submitted in support of Defendant Boehringer Ingelheim Pharmaceuticals, Inc.'s Notice of Removal (the "Notice").

4. Attached to the Notice as Exhibit "1" is a true and correct copy of the Complaint filed on October 28, 2022 in the Circuit Court of the Third Circuit of Hawaii.

5.  Attached to the Notice as Exhibit "2" is a true and correct copy of the Complaint filed on May 29, 2020 in the United States District Court for the District of Hawaii.

6.  Attached to the Notice as Exhibit "3" is a true and correct copy of the Amended Complaint filed on May 11, 2022 in the Southern District of Florida Zantac Multidistrict Litigation ("MDL").

7.  Attached to the Notice as Exhibit "4" is a true and correct copy of the court docket sheet, all process, pleadings, orders, and other documents on file with the Circuit Court for the Third Circuit of Hawaii.

I declare under penalty of perjury that the foregoing is true and correct.

DATED: April 13, 2023

/s/*Phillip R. Green*
Phillip R. Green
Hawaii Bar No. 11632
KING & SPALDING LLP
1180 Peachtree Street, Suite 1600
Atlanta, GA 30309-3521
Telephone: (404) 572-2728
Facsimile: (404) 572-5100
Email:pgreen@kslaw.com

*Attorney for Defendant Boehringer Ingelheim Pharmaceuticals, Inc.*

# Exhibit 1

OGAWA, LAU, NAKAMURA & JEW
Attorneys at Law
A Law Corporation
MICHAEL F. O'CONNOR        1098-0
Suite 600, Richards Building
707 Richards Street
Honolulu, HI 96813
Telephone: (808) 533-3999
mfoconor@ollon.com

**Electronically Filed
THIRD CIRCUIT
3CCV-22-0000355
28-OCT-2022
04:14 PM
Dkt. 1 CMPS**

IN THE CIRCUIT COURT OF THE THIRD CIRCUIT

STATE OF HAWAII

| | |
|---|---|
| GERALDO W. SCATENA,  ) | CIVIL NO. _ _ _ _ _ _ |
| ) | |
| Plaintiff,  ) | **COMPLAINT; SUMMONS** |
| vs.  ) | |
| ) | |
| BOEHRINGER INGELHEIM  ) | |
| PHARMACEUTICALS, INC., a  ) | |
| Delaware corporation; PFIZER, INC., a ) | |
| Delaware corporation; GLAXOSMITH ) | |
| KLINE, LLC., a Delaware company,  ) | |
| COSTCO WHOLESALE  ) | |
| CORPORATION; a Washington  ) | |
| corporation; RITE AID  ) | |
| CORPORATION, a Pennsylvania  ) | |
| corporation,  ) | |
| ) | |
| Defendants.  ) | |
| ) | |

8913-001

## <u>COMPLAINT</u>

COMES NOW the Plaintiff, GERALDO W. SCATENA, by and through his

counsel of record, MICHAEL F. O'CONNOR of OGAWA, LAU, NAKAMURA

& JEW, and alleges the following complaint against the Defendants above

named as follows:

## I.    **INTRODUCTION**

1.    N-Nitrosoethylamine ("NDMA") is a potent carcinogen.  It used to be a chemical byproduct of making rocket fuel in the early 1900s b ut, today, its only use is to induce tumors animals as part of laboratory experiments.  Its only function is to cause cancer.   It has no business being in a human body.

2.    Zantac, chemically known as ranitidine, the popular antacid medication used by millions of people every day, leads to the production of staggering amounts ofNDMA when it is digested by the human body.   The U.S. Food and Drug Administration's ("FDA") allowable daily limit ofNDMA is 96 ng (nanograms) and yet, in a single dose of Zantac, researchers are discovering over 3 million ng.

3.    These recent revelations by independent researchers have caused widespread recalls of Zantac both domestically and internationally, and the FDA is actively investigating the issue, with is preliminary results showing "unacceptable" levels of NDMA.   Indeed, the current owner and controller of the Zantac new drug applications ("NDAs") has recalled all Zantac in the United States.

4. To be clear, this is not a contamination case-the levels of NDMA that researchers are seeing in Zantac is not the product of some manufacturing error. The high levels ofNDMA observed in Zantac is a function of the ranitidine molecule and the way it breaks down in the human digestive system.

5. Plaintiff Gerald W. Scatena took Zantac for about 35 years and, as a result, developed kidney cancer. His cancer was caused by NDMA exposure created by the ingestion of Zantac. This lawsuit seeks damages against the Defendants for causing his cancer.

## II.    PARTIES

6. Plaintiff Gerald> W. Scatena (hereinafter "Plaintiff) resides in Kailua-Kona, Hawaii and is citizen of Hawaii and not of any other state.

7. Defendant Boehringer Ingelheim Pharmaceuticals, Inc. ("BI") is a Delaware corporation with its principal place of business located at 900 Ridgebury Road, Ridgefield, Connecticut 06877. BI is a citizen of Connecticut and Delaware, and not of any other state. BI is a subsidiary of the German company Boehringer Ingelheim Corporation. BI owned and controlled the NDA for over-the-counter ("OTC") Zantac between December 2006 and January 2017, and manufactured and distributed the drug in the United States during that period.

9. Defendant Pfizer, Inc. ("Pfizer") is a Delaware corporation with its

principal place of business located at 235 East 42nd Street, New York, New York

10017.   Pfizer is a citizen of Delaware and New York and is not a citizen of any

other state. In 1993, Glaxo Wellcome, plc formed a joint venture with Warner-

Lambert, Inc. to develop and obtain OTC approval for Zantac. That OTC approval

was obtained in 1995. In 1997, Warner-Lambert and Glaxo Wellcome ended their

joint venture, with Warner-Lambert retaining control over the OTC NDA for

Zantac and the Zantac trademark in the U.S. and Glaxo Welcome retaining control

over the Zantac trademark internationally.   In 2000, Warner-Lambert was

acquired by Pfizer, who maintained control over the Zantac OTC NDA until

December 2006.

10.     Defendant GlaxoSmithKline, LLC ("GSK") is a Delaware company

with its principal place of business located at 5 Crescent Drive, Philadelphia,

Pennsylvania, 19112 and Five Moore Drive, Research Triangle, North Carolina,

27709. GSK is a wholly owned subsidiary of GlaxoSmithKline, plc, which is its

sole member.   GlaxoSmithKline, plc is a citizen of the United Kingdom, and is

not a citizen of any state in the United States.   GlaxoSmithKline plc is the

successor-in-interest to the companies that initially developed, patented, and

commercialized the molecule known as ranitidine.

Ranitidine was initially developed by Alien & Hanburys Ltd., which was a subsidiary of Glaxo Labs Ltd.    Alien & Hanburys Ltd. was awarded Patent No. 4,128,658 by the U.S. Patent and Trademark Office in December 1978, which covered the ranitidine molecule. In 1983, Glaxo Holdings, Ltd. was awarded approval by the U.S.F DA to sell Zantac in the United States. Glaxo Holdings, Ltd. was later absorbed into Glaxo Wellcome, plc. And then, in 2000, GlaxoSmithlaine, plc and GSK were created by the merger of Glaxo Wellcome and SmithKline Beecham. GSK, and its predecessors, controlled the prescription Zantac NDA between 1983 and 2009.

11.    Defendant Costco Wholesale Corporation ("Costco") is a Washington corporation that wholesales and distributes ranitidine tablets for acid reduction. Costco is registered to do business in Hawaii and has numerous outlets located in Hawaii.

12.    Defendant Rite Aid Corporation ("Rite Aid") is a Pennsylvania corporation that retails and distributes ranitidine for acid reduction.  Rite Aid is not registered to do business in Hawaii but is licensed to do business in California.

### III.  JURISDICTION AND VENUE

13.    This Court has subject matter jurisdiction pursuant to H.R.S. § 603-21.5

14.    This Court has personal jurisdiction over each Defendant insofar as each Defendant is authorized and licensed to conduct business in the State of Hawaii, maintains and carries on systematic and continuous contacts in this judicial district, regularly transacts business within this judicial district, and regularly avails itself of the benefits of this judicial district.

15.    Additionally, the Defendants caused tortious injury by acts and omissions in this judicial district and caused tortious injury in this district by acts and omissions outside this district while regularly doing and soliciting business, engaging in a persistent course of conduct, and deriving substantial revenue from goods used or consumed and services rendered in this judicial district. The Plaintiff was, indeed, exposed to Zantac in this judicial district.

16.    Venue is proper before this Court pursuant to H.R.S. § 603-36 because a substantial part of the events or omissions giving rise to this claim occurred within the County of Hawaii.

## IV.    PLAINTIFF SPECIFIC ALLEGATIONS

17.    Plaintiff begun using over-the-counter brand name Zantac and other ranitidine tablets (hereinafter collectively referred to as "Zantac") from about 1998 and continued to use it through 2019.    He took 150 mg. 3 or 4 times per week.    He purchased these products in Hawaii and California.

6

In August 2018, Plaintiff was diagnosed with malignant neoplasm of left kidney.

18.    Based on prevailing scientific evidence, exposure to Zantac (and the attendant NDMA) can cause kidney cancer in humans.

19.    Plaintiffs cancer was caused by ingestion of Zantac.

20.    Had any Defendant warned Plaintiff that Zantac could lead to exposure to NDMA or, in tum, cancer, Plaintiff would not have taken Zantac.

21.    Plaintiff did not learn of the link between his cancer and Zantac exposure until sometime in 2019, when he learned that Zantac contained high levels of NDMA in an online article.

22.    After being diagnosed with cancer, Plaintiff investigated what could have caused his cancer, but to no avail until recently when he heard about the connection of Zantac to NDMA and cancer.

## V.    <u>CAUSES OF ACTION</u>

## <u>COUNT I: STRICT LIABILITY  - DESIGN DEFECT</u>

23.    Plaintiff incorporates by reference each allegation set forth in preceding paragraphs as if fully stated herein.

24.    Plaintiff brings this strict liability claim against Defendants for defective design.

7

25.    At all relevant times, Defendants engaged in the business attesting,

developing, designing, manufacturing, marketing, selling, distributing, and

promoting Zantac products, which are defective and unreasonably dangerous to

consumers, including Plaintiff, thereby placing Zantac products into the stream of

commerce.  These actions were under the ultimate control and supervision of

Defendants.  At all relevant times, Defendants designed, researched, developed,

manufactured, produced, tested, assembled, labeled, advertised, promoted,

marketed, sold, and distributed the Zantac products used by Plaintiff, as described

herein.

26.    At all relevant times, Defendants' Zantac products were

manufactured, designed, and labeled in an unsafe, defective, and inherently

dangerous manner that was dangerous for use by or exposure to the public.

27.    At all relevant times, Defendants' Zantac products reached the

intended consumers, handlers, and users or other persons coming into contact with

these products within this judicial district and throughout the United States, including

Plaintiff, without substantial change in their condition as designed, manufactured, sold,

distributed, labeled, and marketed by Defendants.    At all relevant times, Defendants

registered, researched, manufactured, distributed, marketed and sold Zantac products

within this judicial district and aimed at a consumer market within this judicial district.

Defendants were at all relevant times involved in the retail and promotion of Zantac

products marketed and sold in this judicial district.

28.    Defendants' Zantac products, as researched, tested, developed, designed,

licensed, manufactured, packaged, labeled, distributed, sold, and marketed by

Defendants were defective in design and formulation in that, when they left the control

of Defendants' manufacturers and/or suppliers, they were unreasonably dangerous and

dangerous to an extent beyond that which an ordinary consumer would contemplate.

29.    Defendants' Zantac products, as researched, tested, developed, designed,

licensed, manufactured, packaged, labeled, distributed, sold, and marketed by

Defendants were defective in design and formulation in that, when they left the hands

of Defendants' were defective in design and formulation in that, when they left the

hands of Defendants' manufacturers and/or suppliers, the foreseeable risks exceeded

the alleged benefits associates with their design and formulation.

30.    At all relevant times, Defendants knew or had reason to know that Zantac

products were defective and were inherently dangerous and unsafe when used in the

manner instructed and provided by Defendants.

31.    As a direct and proximate result of this design defect, Plaintiff was

injured and has sustained pecuniary loss resulting and general damages in a sum

exceeding the jurisdictional minimum of this Court.

32.    As proximate result of this design defect, as alleged herein, there was a measurable and significant interval of time during which Plaintiff suffered great mental anguish and other personal injury and damage.

33.    As a proximate result of Defendant's design defect, as alleged herein, Plaintiff sustained loss of income and/or loss of earning capacity.

## COUNT II: STRICT LIABILITY - FAILURE TO WARN

34.    Plaintiff incorporates by reference each allegation set forth in preceding paragraphs as if fully stated herein.

35.    Plaintiff brings this strict liability claim against Defendants for failure to warn.

36.    At all relevant times, Defendants engaged in the business of testing, developing, designing, manufacturing, marketing, selling, distributing, and promoting Zantac products which are defective and unreasonably dangerous to consumers, including Plaintiff, because they do not contain adequate warnings or instructions concerning the dangerous characteristics of Zantac and NDMA.    These actions were under the ultimate control and supervision of Defendants. At all relevant times, Defendants registered, researched, manufactured, distributed, marketed, and sold Zantac and other ranitidine formulations within this judicial district and aimed at a consumer market. Defendants were at all relevant times involved in the retail and promotion of Zantac products marketed and sold in this judicial district.

10

37.    Defendants researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold, and otherwise released into the stream of commerce its Zantac products, and in the course of same, directly advertised or marketed the products to consumers and end users, including Plaintiff, and therefore had a duty to warn of the risks associated with the use of Zantac products.

38.    At all relevant times, Defendants had a duty to properly test, develop, design, manufacture, inspect, package, label, market, promote, sell, distribute, maintain, supply, provide proper warnings, and take such steps as necessary to ensure its Zantac products did not cause users and consumers to suffer from unreasonable and dangerous risks. Defendants had a continuing duty to warn Plaintiff of dangers associated with Zantac. Defendants, as a manufacturer, seller, or distributor of pharmaceutical medication, are held to the knowledge of an expert in the field.

39.    At the time of manufacture, Defendants could have provided the warnings or instructions regarding the full and complete risks of Zantac products because they lmew or should have lmown the unreasonable risks of harm associated with the use of and/or exposure to such products.

40.    At all relevant times, Defendants failed and deliberately refused to investigate, study, test, or promote the safety or to minimize the dangers to users and consumers of their product and to those who would foreseeably use or be harmed by

11

Defendants ' Zantac products, including Plaintiff.

41.    Even though Defendants knew or should have known that Zantac posed a grave risk of harm, they failed to exercise reasonable care to warn of the dangerous risks associated with use and exposure. The dangerous propensities of their products and the carcinogenic characteristics of NDMA as produced within the human body as a result of ingesting Zantac, as described above, were known to Defendants, or scientifically knowable to Defendants through appropriate research and testing by known methods, at the time they distributed, supplied or sold the product, and were not known to end users and consumers, such as Plaintiff.

42.    Defendants knew or should have lmown that their products created significant risks of serious bodily harm to consumers, as alleged herein, and Defendants failed to adequately warn consumers, i.e., the reasonably foreseeable users, of the risks of exposure to its products. Defendants have wrongfully concealed information concerning the dangerous nature of Zantac and the potential for ingested Zantac to transform into the carcinogenic NDMA compound, and farther, have made false and/or misleading statements concerning the safety of Zantac products.

43.    At all relevant times. Defendants' Zantac products reached the intended consumers, handlers, and users or other persons coming into contact with these products within this judicial district and throughout the United

12

States, including Plaintiff, without substantial change in their condition as

designed, manufactured, sold, distributed, labeled, and marketed by

Defendants.

44.    Plaintiff was exposed to Defendants' Zantac products without

knowledge of their dangerous characteristics.

45.    As a direct and proximate result of Defendants placing defective

Zantac products into the stream of commerce, Plaintiff was injured and has

sustained pecuniary loss resulting and general damages in a sum exceeding the

jurisdictional minimum of this Court.

46.    As a direct and proximate result of the failure to warn Plaintiff,

Plaintiff was injured and has sustained pecuniary loss resulting and general

damages in a sum exceeding the jurisdictional minimum of this Court.

47.    As a proximate result of Defendants placing defective Zantac products

into the stream of commerce, as alleged herein, there was a measurable and

significant interval of time during which Plaintiff suffered great mental anguish

and other personal injury and damages.

48.    As a proximate result of Defendants placing defective Zantac products

into the stream of commerce, as alleged herein, Plaintiff sustained loss of income

and/or loss of earning capacity.

**COUNT III: NEGLIGENCE**

49.    Plaintiff incorporates by reference each allegation set forth in preceding paragraphs as is fully stated herein.

50.    Defendants, directly or indirectly, caused Zantac products to be sold, distributed, packaged, labeled, marketed, promoted, and/or used by Plaintiff.  At all relevant time, Defendants registered, researched, manufactured, distributed, marketed and sold Zantac within this judicial district and aimed at a consumer market within this district.

51.    At all relevant times, Defendants had a duty to exercise reasonable care in the design, research, manufacture, marketing, advertisement, supply, promotion, packing, sale, and distribution of Zantac products, including the duty to take all reasonable steps necessary to manufacture, promote, and/or sell product that was not unreasonably dangerous to consumers and users of the product.

52.    At all relevant times, Defendants had a duty to exercise reasonable care in the marketing, advertisement, and sale of the Zantac products.  Defendants' duty of care owed to consumers and the general public included providing accurate, true, and correct information concerning the risks of using Zantac and appropriate, complete and accurate warnings concerning the potential adverse effects of Zantac and, in particular, its ability to transform into the carcinogenic compound NDMA.

14

53.    At all relevant times, Defendants knew or, in the exercise of reasonable care, should have known of the hazards and dangers of Zantac and, specifically, the carcinogenic properties of NDMA when Zantac is ingested.

54.    Accordingly, at all relevant times, Defendants knew or, in the exercise of reasonable care, should have known that use of Zantac products could cause or be associated with Plaintiffs injuries, and thus, create a dangerous and -unreasonable risk of injury to the users of these products, including Plaintiff.

55.    Defendants also knew or, in the exercise of reasonable care, should have known that users and consumers of Zantac were unaware of the risks and the magnitude of the risks associated with use of Zantac.

56.    As such, Defendants breached their duty of reasonable care and failed to exercise ordinary care in the design, research, development, manufacture, testing, marketing, supply, promotion, advertisement, packaging, sale, and distribution of Zantac products, in that Defendants manufactured and produced defective Zantac which carries the potential to transform into the carcinogenic compound NDMA; knew or had reason to know of the defects inherent in its products; knew or had reason to know that a user's or consumer's use of the products created a significant risk of harm and unreasonably dangerous side effects; and failed to prevent or adequately warn of these risks and injuries.   Indeed, Defendants deliberately refused to test Zantac products because they knew that the chemical posed serious health risks to humans.

57.    Defendants were negligent in their promotion of Zantac, outside of the labeling context, by failing to disclose material risk information as part of their promotion and marketing of Zantac, including the internet, television, print advertisements, etc.    Nothing prevented Defendants from being honest in their promotional activities, and, in fact, Defendants had a duty to disclose the truth about the risks associated with Zantac in their promotional efforts, outside of the context of labeling.

58.    Despite their ability and means to investigate, study, and test the products and to provide adequate warnings, Defendants failed to do so. Indeed, Defendants wrongfully concealed information and further made false and/or misleading statements concerning the safety and use of Zantac.

59.    As a direct and proximate result of Defendants negligent conduct as alleged herein, Plaintiff was injured and has sustained pecuniary loss resulting and general damages in a sum exceeding the jurisdictional minimum of this Court.

60.    As a direct and proximate result of Defendants negligent conduct as alleged herein, there was a measurable and significant interval of time during which Plaintiff suffered great mental anguish and other personal injury and damages.

61.     As a proximate result of Defendants alleged conduct as alleged herein, Plaintiff sustained loss of income and/or loss of earning capacity.

62.     Plaintiff incorporates by reference each allegation set forth in preceding paragraphs as if fully stated herein.

63.     At all relevant times, Defendants engaged in the business of testing, developing, designing, manufacturing, marketing, selling, distributing, and promoting Zantac products, which are defective and unreasonably dangerous to consumers, including Plaintiff, thereby placing Zantac products into the stream of commerce. These actions were under the ultimate control and supervision of Defendants.

64.     Defendants had a duty to exercise reasonable care in the research, development, design, testing, packaging, manufacture, inspection, labeling, distributing, marketing, promotion, sale, and release of Zantac products, including a duty to:

a.   ensure that its products did not cause the user unreasonably dangerous side effects;

b.    warn of dangerous and potentially fatal side effects; and

c.    disclose adverse material facts, such as the true risks associated with the use of and exposure to Zantac, when making representations to consumers and the general public, including Plaintiff.

65.    As alleged throughout this pleading, the ability of Defendants to properly disclose those risks associated with Zantac is not limited to representations made on the labeling.

66.    At all relevant times, Defendants expressly represented and warranted to the purchasers of its products, by and through statements made by Defendants in labels, publications, package inserts, and other written materials intended for consumers and the general public, that Zantac products were safe to human health and the environment,\ effective, fit, and proper for their intended use.  Defendants advertised, labeled, marketed, and promoted Zantac products, representing the quality to consumers and the public in such a way as to induce their purchase or use, thereby making an express warranty that Zantac products would conform to the representations.

67.    These express representations include incomplete warnings and instructions that purport, but fail, to include the complete array of risks associated with use of and/or exposure to Zantac.  Defendants knew and/or should have known that the risks expressly included in Zantac warnings and labels did not and do not accurately or adequately set forth the risks of developing the serious injuries complained of herein.  Nevertheless, Defendants expressly represented that Zantac

products were safe and effective, that they were safe and effective for use by

individuals such as the Plaintiff, and/or that they were safe and effective as

consumer medication.

68.    The representations about Zantac, as set forth herein, contained or

constituted affirmations of fact or promises made by the seller to the buyer, which

related to the goods and became part of the basis of the bargain, creating an express

warranty that the goods would conform to the representations.

69.    Defendants placed Zantac products into the stream of commerce for sale

and recommended their use to consumers and the public without adequately warning

of the true risks of developing the injuries associated with the use of Zantac.

70.    Defendants breached these warranties because, among other things,

Zantac products were defective, dangerous, and unfit for use, did not contain labels

representing the true and adequate nature of the risks associated with their use, and

were not merchantable or safe for their intended, ordinary, and foreseeable use and

purpose.   Specifically, Defendants breached the warranties in the following ways:

a.    Defendants represented through its labeling, advertising, and

marketing materials that Zantac products were safe, and intentionally withheld and

concealed information about the risks of serious injury associated with use of

Zantac and by expressly limiting the risks associated with use within its warnings

and labels; and

b.    Defendants represented that Zantac products were safe for use and intentionally concealed information that demonstrated that Zantac, by transforming into NDMA upon human ingestion, had carcinogenic properties, and that Zantac products, therefore, were not safer than alternatives available on the market.

71.    Plaintiff detrimentally relied on the express warranties and representations of Defendants concerning the safety and/or risk profile of Zantac in deciding to purchase the product. Plaintiff reasonably relied upon Defendants to disclose known defects, risks, dangers, and side effects of Zantac. Plaintiff would not have purchased or used Zantac had Defendants properly disclosed the risks associated with the product, either through advertising, labeling, or any other disclosure.

72.    As a direct and proximate result of Defendants' breach of express warranty, Plaintiff has sustained pecuniary loss and general damages in a sum exceeding the jurisdictional minimum of this Court.

73.    As a proximate result of Defendants' breach of express warranty, as alleged herein, there was a measurable and significant interval of time during which Plaintiff suffered great mental anguish and other personal injury and damages.

74.    As a proximate result of Defendants' breach of express warranty, as alleged herein, Plaintiff sustained a loss of income and/or loss of earning capacity.

**COUNT V: BREACH OF IMPLIED WARRANTIES**

75.    Plaintiff incorporates by reference each allegation set forth in preceding paragraphs as if fully stated herein.

76.    At all relevant times, Defendants engaged in the business of testing, developing, signing, manufacturing, marketing, selling, distributing, and promoting Zantac products, which were and are defective and unreasonably dangerous to consumers, including Plaintiff, thereby placing Zantac products into the stream of commerce.

77.    Before the time Plaintiff used Zantac products.    Defendants impliedly warranted to its consumers, including Plaintiff, that Zantac products were of merchantable quality and safe and fit for the use for which they were intended; specifically, as consumer medication.

78.    But Defendants failed to disclose that Zantac has dangerous propensities when used as intended and that use of Zantac products carries an increased risk of developing severe injuries, including Plaintiffs injuries.

79.    Plaintiff was an intended beneficiary of the implied warranties made by Defendants to purchasers of its Zantac products.

80.    The Zantac products were expected to reach and did in fact reach consumers and users, including Plaintiff, without substantial change in the

condition in which they were manufactured and sold by Defendants.

81.    At all relevant times, Defendants were aware that consumers and users of its products, including Plaintiff, would use Zantac products as marketed by Defendants, which is to say that Plaintiff was a foreseeable user of Zantac.

82.    Defendants intended that Zantac products be used in the manner in which Plaintiff, in fact, used them and which Defendants impliedly warranted to be of merchantable quality, safe, and fit for this use, even though Zantac was not adequately tested or researched.

83.    In reliance upon Defendants' implied warranty, Plaintiff used Zantac as instructed and labeled and in the foreseeable manner intended, recommended, promoted, and marketed by Defendants.

84.    Plaintiff could not have reasonably discovered or known of the risks of serious injury associated with Zantac.

85.    Defendants breached their implied warranty to Plaintiff in that Zantac products were not of merchantable quality, safe, or fit for their intended use, or adequately tested. Zantac has dangerous propensities when used as intended and can cause serious injuries, including those injuries complained of herein.

86.    The harm caused by Defendants' Zantac products far outweighed their benefit, rendering the products more dangerous than an ordinary consumer or user would expect and more dangerous than alternative products.

87.    As a direct and proximate result of Defendants' breach of implied warranty, Plaintiff has sustained pecuniary loss and general damages in a sum exceeding the jurisdictional minimum of this Court.

88.    As a proximate result of the Defendants' breach of implied warranty, as alleged herein, there was a measurable and significant interval of time during which Plaintiff suffered great mental anguish and other personal injury and damages.

89.    As a proximate result of Defendants' breach of implied warranty, as alleged herein, Plaintiff sustained a loss of income and/or loss of earning capacity.

## COUNT VI: EXEMPLARY/PUNITIVE DAMAGES

90.    Defendants' conduct as alleged herein was done with reckless disregard for human life, oppression, and malice. Defendants were fully aware of the safety risks of Zantac, particularly the carcinogenic potential of Zantac as it transforms into NDMA within the chemical environment of the human body. Nonetheless, Defendants deliberately crafted their label, marketing, and promotion to mislead consumers.

23

91.   This was not done by accident or through some justifiable negligence.

Rather, Defendants knew that it could turn a profit by convincing consumers that

Zantac was harmless to humans, and that full disclosure of the true risks of Zantac

would limit the amount of money Defendants would make selling Zantac.

Defendants' Defendants' object was accomplished not only through its misleading label,

but through a comprehensive scheme of selective misleading research and testing, false

advertising, and deceptive omissions as more fully alleged throughout this pleading.

Plaintiff was denied the right to make an informed decision about whether to purchase

and use Zantac, knowing the full risks attendant to that use.   Such conduct was done

with conscious disregard of Plaintiffs rights.

92.   Accordingly, Plaintiff requests punitive damages against

Defendants for the harm caused to Plaintiff.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays for the following relief:

(1)   That the Court award Plaintiff, judgment against Defendants, in such

sums as shall be determined to fully and fairly compensate them for all general, and

special damages incurred, or to be incurred, as the direct and proximate result of the

acts and omissions of Defendants, in an amount to be proven at trial;

(2)   That the Court award Plaintiff exemplary or punitive damages;

(3)   That the Court award Plaintiff his respective costs, disbursements and

reasonable attorneys' fees incurred;

24

(4)     That the Court award Plaintiff the opportunity to amend or modify the provisions of this complaint as necessary or appropriate after additional or further discovery is completed in this matter, and after all appropriate parties have been served; and

(5)     That the Court award Plaintiff such other and further relief as it deems necessary and proper in the circumstances.


DATED:  Honolulu, Hawaii, October 28, 2022.



/s/MICHAEL F. O'CONNOR
MICHAEL F. O'CONNOR
Attorney for Plaintiff
GERALDO W. SCATENA

25

| **STATE OF HAWAI'I**<br>CIRCUIT COURT OF THE<br>THIRD CIRCUIT | **SUMMONS**<br>TO ANSWER CIVIL COMPLAINT | CASE NUMBER |
|---|---|---|

| PLAINTIFF<br><br>GERALDO W. SCATENA | VS. | DEFENDANT(S)<br><br>BOEHRINGER INGELHEIM PHARMACEUTICALS, INC., a Delaware corporation; PFIZER, INC., a Delaware corporation; GLAXOSMITH KLINE, LLC., a Delaware company; COSTCO WHOLESALE CORPORATION, a Washington corporation; RITE AID CORPORATION, a Pennsylvania corporation |
|---|---|---|

PLAINTIFF'S NAME & ADDRESS, TEL. NO.

MICHAEL F. O'CONNOR, #1098
Ogawa Lau Nakamura & Jew
707 Richards Street, Suite 600, Richards Building
Honolulu, Hawaii 96813
Telephone No.: (808) 533-3999
mfoconnor@ollon.com

**TO THE ABOVE-NAMED DEFENDANT(S)**

You are hereby summoned and required to file with the court and serve upon

MICHAEL F. O'CONNOR ESQ., Ogawa Lau Nakamura & Jew, 707 Richards Street, Suite 600, Richards Building, Honolulu, Hawaii 96813

_____ ,

plaintiff's attorney, whose address is stated above, an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the date of service.  If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

**THIS SUMMONS SHALL NOT BE PERSONALLY DELIVERED BETWEEN 10:00 P.M. AND 6:00 A.M. ON PREMISES NOT OPEN TO THE GENERAL PUBLIC, UNLESS A JUDGE OF THE ABOVE-ENTITLED COURT PERMITS, IN WRITING ON THIS SUMMONS, PERSONAL DELIVERY DURING THOSE HOURS.**

**A FAILURE TO OBEY THIS SUMMONS MAY RESULT IN AN ENTRY OF DEFAULT AND DEFAULT JUDGMENT AGAINST THE DISOBEYING PERSON OR PARTY.**

| The original document is filed in the Judiciary's electronic case management system which is accessible via eCourt Kokua at: http:/www.courts.state.hi.us | **Effective Date of 28-Oct-2019**<br>Signed by: /s/ Cheryl Salmo<br>**Clerk, 3rd Circuit, State of Hawai'i** |  |
|---|---|---|

 In accordance with the Americans with Disabilities Act, and other applicable state and federal laws, if you require a reasonable accommodation for a disability, please contact the ADA Coordinator at the Circuit Court Administration Office on HAWAII- Phone No. 808-961-7424, TTY 808-961-7422, FAX 808-961-7411, at least ten (10) working days prior to your hearing or appointment date.

# Exhibit 2

OGAWA, LAU, NAKAMURA & JEW
Attorneys at Law
A Law Corporation
MICHAEL F. O'CONNOR        1098-0
Suite 600, Richards Building
707 Richards Street
Honolulu, HI  96813
Telephone:  (808) 533-3999
mfoconor@ollon.com

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| GERALDO W. SCATENA, | ) | CIVIL NO. _____ |
| | ) | |
| Plaintiff, | ) | **COMPLAINT; SUMMONS** |
| vs. | ) | |
| | ) | |
| BOEHRINGER INGELHEIM | ) | |
| PHARMA CUTICALS, INC., a | ) | |
| Delaware corporation; PFIZER, INC., a | ) | |
| Delaware corporation; GLAXOSMITH | ) | |
| KLINE, LLC., a Delaware company, | ) | |
| COSTCO WHOLESALE | ) | |
| CORPORATION; a Washington | ) | |
| corporation; RITE AID | ) | |
| CORPORATION, a Pennsylvania | ) | |
| corporation, | ) | |
| | ) | |
| Defendants. | ) | |
| ——————————————— | ) | |

## COMPLAINT

COMES NOW the Plaintiff, GERALDO W. SCATENA, by and through his

counsel of record, MICHAEL F. O'CONNOR  of  OGAWA, LAU, NAKAMURA

& JEW, and alleges the following complaint against the Defendants above

named as follows:

## I.   INTRODUCTION

1.      N-Nitrosoethylamine ("NDMA") is a potent carcinogen.   It used to be

a chemical byproduct of making rocket fuel in the early 1900s b ut, today, its only

use is to induce tumors animals as part of laboratory experiments.   Its only

function is to cause cancer.   It has no business being in a human body.

2.      Zantac, chemically known as ranitidine, the popular antacid

medication used by millions of people  every day, leads to the production of

staggering amounts of NDMA when it is digested by the human body.   The U.S.

Food and Drug Administration's ("FDA") allowable daily limit of NDMA is 96 ng

(nanograms) and yet, in a single dose of Zantac, researchers are discovering over 3

million ng.

3.      These recent revelations by independent researchers have caused

widespread recalls of Zantac both domestically and internationally, and the FDA is

actively investigating the issue, with is preliminary results showing "unacceptable"

levels of NDMA.   Indeed, the current owner and controller

of the Zantac new drug applications ("NDAs") has recalled all Zantac in the United

States.

4.    To be clear, this is not a contamination case—the levels of NDMA that researchers are seeing in Zantac is not the product of some manufacturing error.   The high levels of NDMA observed in Zantac is a function of the ranitidine molecule and the way it breaks down in the human digestive system.

5.    Plaintiff  Gerald  W. Scatena took Zantac for about  35 years and, as a result, developed kidney cancer.    His cancer was caused by NDMA exposure created by the ingestion of Zantac. This lawsuit seeks damages against the Defendants for causing his cancer.

## II.    PARTIES

6.    Plaintiff Gerald W. Scatena (hereinafter "Plaintiff) resides in Kailua-Kona, Hawaii and is citizen of Hawaii and not of any other state.

7.    Defendant Boehringer Ingelheim Pharmaceuticals, Inc. ("BI") is a Delaware corporation with its principal place of business located at 900 Ridgebury Road, Ridgefield, Connecticut 06877.    BI is a citizen of Connecticut and Delaware, and not of any other state. BI is a subsidiary of the German company Boehringer Ingelheim Corporation. BI owned and controlled the NDA for over-the-counter ("OTC") Zantac between December 2006 and January 2017, and manufactured and distributed the drug in the United States during that period.

9.      Defendant Pfizer, Inc. ("Pfizer") is a Delaware corporation with its principal place of business located at 235 East 42nd Street, New York, New York 10017.    Pfizer is a citizen of Delaware and New York and is not a citizen of any other state. In 1993, Glaxo Wellcome, plc formed a joint venture with Warner-Lambert, Inc. to develop and obtain OTC approval for Zantac. That OTC approval was obtained in 1995. In 1997, Warner-Lambert and Glaxo Wellcome ended their joint venture, with Warner-Lambert retaining control over the OTC NDA for Zantac and the Zantac trademark in the U.S. and Glaxo Welcome retaining control over the Zantac trademark internationally.    In 2000, Warner-Lambert was acquired by Pfizer, who maintained control over the Zantac OTC NDA until December 2006.

10.     Defendant GlaxoSmithKline, LLC ("GSK") is a Delaware company with its principal place of business located at 5 Crescent Drive, Philadelphia, Pennsylvania, 19112 and Five Moore Drive, Research Triangle, North Carolina, 27709. GSK is a wholly owned subsidiary of GlaxoSmithKline, plc, which is its sole member.    GlaxoSmithKline, plc is a citizen of the United Kingdom, and is not a citizen of any state in the United States.    GlaxoSmithKline plc is the successor-in-interest to the companies that initially developed, patented, and commercialized the molecule known as ranitidine.

Ranitidine was initially developed by Alien & Hanburys Ltd., which was a subsidiary of Glaxo Labs Ltd.   Alien & Hanburys Ltd. was awarded Patent No. 4,128,658 by the U.S. Patent and Trademark Office in December 1978, which covered the ranitidine molecule. In 1983, Glaxo Holdings, Ltd. was awarded approval by the U.S.F DA to sell Zantac in the United States. Glaxo Holdings, Ltd. was later absorbed into Glaxo Wellcome, plc. And then, in 2000, GlaxoSmithlaine, plc and GSK were created by the merger of Glaxo Wellcome and SmithKline Beecham. GSK, and its predecessors, controlled the prescription Zantac NDA between 1983 and 2009.

11.     Defendant Costco Wholesale Corporation ("Costco") is a Washington corporation that wholesales and distributes ranitidine tablets for acid reduction. Costco is registered to do business in Hawaii and has numerous outlets located in Hawaii.

12.     Defendant Rite Aid Corporation ("Rite Aid") is a Pennsylvania corporation that retails and distributes ranitidine for acid reduction.  Rite Aid is not registered to do business in Hawaii but is licensed to do business in California.

### III.   JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332. There is complete diversity of citizenship between the parties.   In addition,

Plaintiff seeks damages in excess of $75,000, exclusive of interest and costs.

14.    This Court has personal jurisdiction over each Defendant insofar as each Defendant is authorized and licensed to conduct business in the State of Hawaii, maintains and carries on systematic and continuous contacts in this judicial district, regularly transacts business within this judicial district, and regularly avails itself of the benefits of this judicial district.

15.    Additionally, the Defendants caused  tortious injury by acts and omissions in this judicial district and caused tortious injury in this district by acts and omissions outside this district while regularly doing and soliciting business, engaging in a persistent course of conduct, and deriving substantial revenue from goods used or consumed and services rendered in this judicial district. The Plaintiff was, indeed, exposed to Zantac in this judicial district.

16.    Venue is proper before this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to this claim occurred within this judicial district.

## IV.    PLAINTIFF SPECIFIC ALLEGATIONS

17.    Plaintiff begun using over-the-counter brand name Zantac and other ranitidine tablets (hereinafter collectively referred to as "Zantac") from about 1998 and continued to use it through 2019.   He took 150 mg. 3 or 4 times per week.   He purchased these products in Hawaii and California.

In August 2018, Plaintiff was diagnosed with malignant neoplasm of left kidney.

18.    Based on prevailing scientific evidence, exposure to Zantac (and the attendant NDMA) can cause kidney cancer in humans.

19.    Plaintiff's cancer was caused by ingestion of Zantac.

20.    Had any Defendant warned Plaintiff that Zantac could lead to exposure to NDMA or, in turn, cancer, Plaintiff would not have taken Zantac.

21.    Plaintiff did not learn of the link between his cancer and Zantac exposure until sometime in 2019, when he learned that Zantac contained high levels of NDMA in an online article.

22.    After being diagnosed with cancer, Plaintiff investigated what could have caused his cancer, but to no avail until recently when he heard about the connection of Zantac to NDMA and cancer.

## V.    CAUSES OF ACTION

## COUNT I: STRICT LIABILITY  - DESIGN DEFECT

23.    Plaintiff incorporates by reference each allegation set forth in preceding paragraphs as if fully stated herein.

24.    Plaintiff brings this strict liability claim against Defendants for defective design.

25.    At all relevant times, Defendants engaged in the business attesting, developing, designing, manufacturing, marketing, selling, distributing, and promoting Zantac products, which are defective and unreasonably dangerous to consumers, including Plaintiff, thereby placing Zantac products into the stream of commerce.  These actions were under the ultimate control and supervision of Defendants.  At all relevant times, Defendants designed, researched, developed, manufactured, produced, tested, assembled, labeled, advertised, promoted, marketed, sold, and distributed the Zantac products used by Plaintiff, as described herein.

26.    At all relevant times, Defendants' Zantac products were manufactured, designed, and labeled in an unsafe, defective, and inherently dangerous manner that was dangerous for use by or exposure to the public.

27.   At all relevant times, Defendants' Zantac products reached  the intended consumers, handlers, and users or other persons coming into contact with these products within this judicial district and throughout the United States, including Plaintiff, without substantial change in their condition as designed, manufactured, sold, distributed, labeled, and marketed by Defendants.   At all relevant times, Defendants registered, researched, manufactured, distributed, marketed and sold Zantac products within this judicial district and aimed at a consumer market within this judicial district.

8

Defendants were at all relevant times involved in the retail and promotion of Zantac

products marketed and sold in this judicial district.

28.    Defendants' Zantac products, as researched, tested, developed, designed,

licensed, manufactured, packaged, labeled, distributed, sold, and marketed by

Defendants were defective in design and formulation in that, when they left the control

of Defendants' manufacturers and/or suppliers, they were unreasonably dangerous and

dangerous to an extent beyond that which an ordinary consumer would contemplate.

29.    Defendants' Zantac  products, as researched, tested, developed, designed,

licensed, manufactured, packaged, labeled, distributed, sold, and marketed by

Defendants were defective in design and formulation in that, when they left the hands

of Defendants'  were defective in design and formulation in that, when they left the

hands of Defendants' manufacturers and/or suppliers, the foreseeable risks exceeded

the alleged benefits associates with their design and formulation.

30.    At all relevant times, Defendants knew or had reason to know that Zantac

products were defective and were inherently dangerous and unsafe when used in the

manner instructed and provided by Defendants.

31.    As a direct and proximate result of this design defect, Plaintiff was

injured and has sustained pecuniary loss resulting and general damages in a sum

exceeding the jurisdictional minimum of this Court.

32.    As proximate result of this design defect, as alleged herein, there was a measurable and significant interval of time during which Plaintiff suffered great mental anguish and other personal injury and damage.

33.    As a proximate result of Defendant's design defect, as alleged herein, Plaintiff sustained loss of income and/or loss of earning capacity.

## COUNT II:  STRICT LIABILITY – FAILURE TO WARN

34.    Plaintiff incorporates by reference each allegation set forth in preceding paragraphs as if fully stated herein.

35.    Plaintiff brings this strict liability claim against Defendants for failure to warn.

36.    At all relevant times, Defendants engaged in the business of testing, developing, designing, manufacturing, marketing, selling, distributing, and promoting Zantac products which are defective and unreasonably dangerous to consumers, including Plaintiff, because they do not contain adequate warnings or instructions concerning the dangerous characteristics of Zantac and NDMA.   These actions were under the ultimate control and supervision of Defendants. At all relevant times, Defendants registered, researched, manufactured, distributed, marketed, and sold Zantac and other ranitidine formulations within this judicial district and aimed at a consumer market. Defendants were at all relevant times involved in the retail and promotion of Zantac products marketed and sold in this judicial district.

10

37.     Defendants researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold, and otherwise released into the stream of commerce its Zantac products, and in the course of same, directly advertised or marketed the products to consumers and end users, including Plaintiff, and therefore had a duty to warn of the risks associated with the use of Zantac products.

38.     At all relevant times, Defendants had a duty to properly test, develop, design, manufacture, inspect, package, label, market, promote, sell, distribute, maintain, supply, provide proper warnings, and take such steps as necessary to ensure its Zantac products did not cause users and consumers to suffer from unreasonable and dangerous risks. Defendants had a continuing duty to warn Plaintiff of dangers associated with Zantac. Defendants, as a manufacturer, seller, or distributor of pharmaceutical medication, are held to the knowledge of an expert in the field.

39.     At the time of manufacture, Defendants could have provided the warnings or instructions regarding the full and complete risks of Zantac products because they knew or should have known the unreasonable risks of harm associated with the use of and/or exposure to such products.

40.     At all relevant times, Defendants failed and deliberately refused to investigate, study, test, or promote the safety  or to minimize the dangers to users and consumers of their product and to those who would foreseeably use or be harmed by

Defendants ' Zantac products, including Plaintiff.

41.     Even though Defendants knew or should have known that Zantac posed a grave risk of harm, they failed to exercise reasonable care to warn of the dangerous risks associated with use and exposure. The dangerous propensities of their products and the carcinogenic characteristics of NDMA as produced within the human body as a result of ingesting Zantac, as described above, were known to Defendants, or scientifically knowable to Defendants through appropriate research and testing by known methods, at the time they distributed, supplied or sold the product, and were not known to end users and consumers, such as Plaintiff.

42.     Defendants knew or should have known that their products created significant risks of serious bodily harm to consumers, as alleged herein, and Defendants failed to adequately warn consumers, i.e., the reasonably foreseeable users, of the risks of exposure to its products.  Defendants have wrongfully concealed information concerning the dangerous nature of Zantac and the potential for ingested Zantac to transform into the carcinogenic NDMA compound, and farther, have made false and/or misleading statements concerning the safety of Zantac products.

43.     At all relevant times.   Defendants' Zantac products reached the intended consumers, handlers, and users or other persons coming into contact with these products within this judicial district and throughout the United

States, including Plaintiff, without substantial change in their condition as

designed, manufactured, sold, distributed, labeled, and marketed by

Defendants.

44.    Plaintiff was exposed to Defendants' Zantac products without

knowledge of their dangerous characteristics.

45.    As a direct and proximate result of Defendants placing defective

Zantac products into the stream of commerce, Plaintiff was injured and has

sustained pecuniary loss resulting and general damages in a sum exceeding the

jurisdictional minimum of this Court.

46.    As a direct and proximate result of the failure to warn Plaintiff,

Plaintiff was injured and has sustained pecuniary loss resulting and general

damages in a sum exceeding the jurisdictional minimum of this Court.

47.    As a proximate result of Defendants placing defective Zantac products

into the stream of commerce, as alleged herein, there was a measurable and

significant interval of time during which Plaintiff suffered great mental anguish

and other personal injury and damages.

48.    As a proximate result of Defendants placing defective Zantac products

into the stream of commerce, as alleged herein, Plaintiff sustained loss of income

and/or loss of earning capacity.

## COUNT III: NEGLIGENCE

49.     Plaintiff incorporates by reference each allegation set forth in preceding paragraphs as is fully stated herein.

50.     Defendants, directly or indirectly, caused Zantac products to be sold, distributed, packaged, labeled, marketed, promoted, and/or used by Plaintiff.  At all relevant time, Defendants registered, researched, manufactured, distributed, marketed and sold Zantac within this judicial district and aimed at a consumer market within this district.

51.     At all relevant times, Defendants had a duty to exercise reasonable care in the design, research, manufacture, marketing, advertisement, supply, promotion,  packing, sale, and distribution of Zantac products, including the duty to take all reasonable steps necessary to manufacture, promote, and/or sell product that was not unreasonably dangerous to consumers and users of the product.

52.     At all relevant times, Defendants had a duty to exercise reasonable care in the marketing, advertisement, and sale of the Zantac products.  Defendants' duty of care owed to consumers and the general public included providing accurate, true, and correct information concerning the risks of using Zantac and appropriate, complete and accurate warnings concerning the potential adverse effects of Zantac and, in particular, its ability to transform into the carcinogenic compound NDMA.

53.    At all relevant times, Defendants knew or, in the exercise of reasonable care, should have known of the hazards and dangers of Zantac and, specifically, the carcinogenic properties of NDMA when Zantac is ingested.

54.    Accordingly, at all relevant times, Defendants knew or, in the exercise of reasonable care, should have known that use of Zantac products could cause or be associated with Plaintiffs injuries, and thus, create a dangerous and ˉunreasonable risk of injury to the users of these products, including Plaintiff.

55.    Defendants also knew or, in the exercise of reasonable care, should have known that users and consumers of Zantac were unaware of the risks and the magnitude of the risks associated with use of Zantac.

56.    As such, Defendants breached their duty of reasonable care and failed to exercise ordinary care in the design, research, development, manufacture, testing, marketing, supply, promotion, advertisement, packaging, sale, and distribution of Zantac products, in that Defendants manufactured and produced defective Zantac which carries the potential to transform into the carcinogenic compound NDMA; knew or had reason to know of the defects inherent in its products; knew or had reason to know that a user's or consumer's use of the products created a significant risk of harm and unreasonably dangerous side effects; and failed to prevent or adequately warn of these risks and injuries.    Indeed, Defendants deliberately refused to test Zantac products because they knew that the chemical posed serious health risks to humans.

57.     Defendants were negligent in their promotion of Zantac, outside of the labeling context, by failing to disclose material risk information as part of their promotion and marketing of Zantac, including the internet, television, print advertisements, etc.   Nothing prevented Defendants from being honest in their promotional activities, and, in fact, Defendants had a duty to disclose the truth about the risks associated with Zantac in their promotional efforts, outside of the context of labeling.

58.     Despite their ability and means to investigate, study, and test the products and to provide adequate warnings, Defendants failed to do so.   Indeed, Defendants wrongfully concealed information and further made false and/or misleading statements concerning the safety and use of Zantac.

59.     As a direct and proximate result of Defendants negligent conduct as alleged herein, Plaintiff was injured and has sustained pecuniary loss resulting and general damages in a sum exceeding the jurisdictional minimum of this Court.

60.     As a direct and proximate result of Defendants negligent conduct as alleged herein, there was a measurable and significant interval of time during which Plaintiff suffered great mental anguish and other personal injury and damages.

16

61.     As a proximate result of Defendants alleged conduct as alleged herein, Plaintiff sustained loss of income and/or loss of earning capacity.

62.     Plaintiff incorporates by reference each allegation set forth in preceding paragraphs as if fully stated herein.

63.     At all relevant times, Defendants engaged in the business of testing, developing, designing, manufacturing, marketing, selling, distributing, and promoting Zantac products, which are defective and unreasonably dangerous to consumers, including Plaintiff, thereby placing Zantac products into the stream of commerce. These actions were under the ultimate control and supervision of Defendants.

64.     Defendants had a duty to exercise reasonable care in the research, development, design, testing, packaging, manufacture, inspection, labeling, distributing, marketing, promotion, sale, and release of Zantac products, including a duty to:

    a.   ensure that its products did not cause the user unreasonably dangerous side effects;

    b.    warn of dangerous and potentially fatal side effects; and

    c.    disclose adverse material facts, such as the true risks associated with the use of and exposure to Zantac, when making representations to consumers and the general public, including Plaintiff.

65.    As alleged throughout this pleading, the ability of Defendants to properly disclose those risks associated with Zantac is not limited to representations made on the labeling.

66.    At all relevant times, Defendants expressly represented and warranted to the purchasers of its products, by and through statements made by Defendants in labels, publications, package inserts, and other written materials intended for consumers and the general public, that Zantac products were safe to human health and the environment,\ effective, fit, and proper for their intended use.  Defendants advertised, labeled, marketed, and promoted Zantac products, representing the quality to consumers and the public in such a way as to induce their purchase or use, thereby making an express warranty that Zantac products would conform to the representations.

67.    These express representations include incomplete warnings and instructions that purport, but fail, to include the complete array of risks associated with use of and/or exposure to Zantac.   Defendants knew and/or should have known that the risks expressly included in Zantac warnings and labels did not and do not accurately or adequately set forth the risks of developing the serious injuries complained of herein.   Nevertheless, Defendants expressly represented that Zantac

products were safe and effective, that they were safe and effective for use by

individuals such as the Plaintiff, and/or that they were safe and effective as

consumer medication.

68.     The representations about Zantac, as set forth herein, contained or

constituted affirmations of fact or promises made by the seller to the buyer, which

related to the goods and became part of the basis of the bargain, creating an express

warranty that the goods would conform to the representations.

69.     Defendants placed Zantac products into the stream of commerce for sale

and recommended their use to consumers and the public without adequately warning

of the true risks of developing the injuries associated with the use of Zantac.

70.     Defendants breached these warranties because, among other things,

Zantac products were defective, dangerous, and unfit for use, did not contain labels

representing the true and adequate nature of the risks associated with their use, and

were not merchantable or safe for their intended, ordinary, and foreseeable use and

purpose.   Specifically, Defendants breached the warranties in the following ways:

a.     Defendants represented through its labeling, advertising, and

marketing materials that Zantac products were safe, and intentionally withheld and

concealed information about the risks of serious injury associated with use of

Zantac and by expressly limiting the risks associated with use within its warnings

and labels; and

b.      Defendants represented that Zantac products were safe for use and intentionally concealed information that demonstrated that Zantac, by transforming into NDMA upon human ingestion, had carcinogenic properties, and that Zantac products, therefore, were not safer than alternatives available on the market.

71.    Plaintiff detrimentally relied on the express warranties and representations of Defendants concerning the safety and/or risk profile of Zantac in deciding to purchase the product. Plaintiff reasonably relied upon Defendants to disclose known defects, risks, dangers, and side effects of Zantac. Plaintiff would not have purchased or used Zantac had Defendants properly disclosed the risks associated with the product, either through advertising, labeling, or any other disclosure.

72.    As a direct and proximate result of Defendants' breach of express warranty, Plaintiff has sustained pecuniary loss and general damages in a sum exceeding the jurisdictional minimum of this Court.

73.    As a proximate result of Defendants' breach of express warranty, as alleged herein, there was a measurable and significant interval of time during which Plaintiff suffered great mental anguish and other personal injury and damages.

74.    As a proximate result of Defendants' breach of express warranty, as alleged herein, Plaintiff sustained a loss of income and/or loss of earning capacity.

## COUNT V: BREACH OF IMPLIED WARRANTIES

75.     Plaintiff incorporates by reference each allegation set forth in preceding paragraphs as if fully stated herein.

76.     At all relevant times, Defendants engaged in the business of testing, developing, signing, manufacturing, marketing, selling, distributing, and promoting Zantac products, which were and are defective and unreasonably dangerous to consumers, including Plaintiff, thereby placing Zantac products into the stream of commerce.

77.     Before the time Plaintiff used Zantac products.   Defendants impliedly warranted to its consumers, including Plaintiff, that Zantac products were of merchantable quality and safe and fit for the use for which they were intended; specifically, as consumer medication.

78.     But Defendants failed to disclose that Zantac has dangerous propensities when used as intended and that use of Zantac products carries an increased risk of developing severe injuries, including Plaintiffs injuries.

79.     Plaintiff was an intended beneficiary of the implied warranties made by Defendants to purchasers of its Zantac products.

80.     The Zantac products were expected to reach and did in fact reach consumers and users, including Plaintiff, without substantial change in the

condition in which they were manufactured and sold by Defendants.

81.     At all relevant times, Defendants were aware that consumers and users of its products, including Plaintiff, would use Zantac products as marketed by Defendants, which is to say that Plaintiff was a foreseeable user of Zantac.

82.     Defendants intended that Zantac products be used in the manner in which Plaintiff, in fact, used them and which Defendants impliedly warranted to be of merchantable quality, safe, and fit for this use, even though Zantac was not adequately tested or researched.

83.     In reliance upon Defendants' implied warranty, Plaintiff used Zantac as instructed and labeled and in the foreseeable manner intended, recommended, promoted, and marketed by Defendants.

84.     Plaintiff could not have reasonably discovered or known of the risks of serious injury associated with Zantac.

85.     Defendants breached their implied warranty to Plaintiff in that Zantac products were not of merchantable quality, safe, or fit for their intended use, or adequately tested. Zantac has dangerous propensities when used as intended and can cause serious injuries, including those injuries complained of herein.

86.     The harm caused by Defendants' Zantac products far outweighed their benefit, rendering the products more dangerous than an ordinary consumer or user would expect and more dangerous than alternative products.

87.     As a direct and proximate result of Defendants' breach of implied warranty, Plaintiff has sustained pecuniary loss and general damages in a sum exceeding the jurisdictional minimum of this Court.

88.     As a proximate result of the Defendants' breach of implied warranty, as alleged herein, there was a measurable and significant interval of time during which Plaintiff suffered great mental anguish and other personal injury and damages.

89.     As a proximate result of Defendants' breach of implied warranty, as alleged herein, Plaintiff sustained a loss of income and/or loss of earning capacity.


## COUNT VI: EXEMPLARY/PUNITIVE DAMAGES

90.     Defendants' conduct as alleged herein was done with reckless disregard for human life, oppression, and malice.   Defendants were fully aware of the safety risks of Zantac, particularly the carcinogenic potential of Zantac as it transforms into NDMA within the chemical environment of the human body. Nonetheless, Defendants deliberately crafted their label, marketing, and promotion to mislead consumers.

23

91.     This was not done by accident or through some justifiable negligence. Rather,  Defendants knew that it could turn a profit by convincing consumers that Zantac was harmless to humans, and that full disclosure of the true risks of Zantac would limit the amount of money Defendants would make selling Zantac. Defendants' Defendants' object was accomplished not only through its misleading label, but through a comprehensive scheme of selective misleading research and testing, false advertising, and deceptive omissions as more fully alleged throughout this pleading. Plaintiff was denied the right to make an informed decision about whether to purchase and use Zantac, knowing the full risks attendant to that use.    Such conduct was done with conscious disregard of Plaintiffs rights.

92.     Accordingly, Plaintiff requests punitive damages against Defendants for the harm caused to Plaintiff.

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff prays for the following relief:

(1)     That the Court award Plaintiff, judgment against Defendants, in such sums as shall be determined to fully and fairly compensate them for all general, and special damages incurred, or to be incurred, as the direct and proximate result of the acts and omissions of Defendants, in an amount to be proven at trial;

(2)     That the Court award Plaintiff exemplary or punitive damages;

(3)     That the Court award Plaintiff his respective costs, disbursements and reasonable attorneys' fees incurred;

24

(4)     That the Court award Plaintiff the opportunity to amend or modify the provisions of this complaint as necessary or appropriate after additional or further discovery is completed in this matter, and after all appropriate parties have been served; and

(5)     That the Court award Plaintiff such other and further relief as it deems necessary and proper in the circumstances.

DATED:  Honolulu, Hawaii, May 29, 2020.


/s/MICHAEL F. O'CONNOR
MICHAEL F. O'CONNOR
Attorney for Plaintiff
GERALDO W. SCATENA

# Exhibit 3

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**MDLNO2924**
**20-MD-2924**

IN RE: ZANTAC (RANITIDINE)
PRODUCTS LIABILITY
LITIGATION

**JUDGE ROBIN L ROSENBERG**
**MAGISTRATE JUDGE BRUCE REINHART**

_____/

**THIS DOCUMENT RELATES TO:**

**GERALDO W. SCATENA**                         **JURY TRIAL DEMANDED**

_____/

**SHORT-FORM COMPLAINT** - Version 2

The Plaintiff(s) named below, by counsel, file(s) this Short Form Complaint against Defendants named below. Plaintiff(s) incorporate(s) by reference the allegations contained in the Master Personal Injury Complaint ("MPIC") in *In re: Zantac (Ranitidine) Products Liability Litigation,* MDL No. 2924 (S.D. Fla). Plaintiff(s) file(s) this Short-Form Complaint as permitted by Pretrial Order No. 31 and as modified by the Court's Orders regarding motions to dismiss [DE 2532, 2512, 2513, 2515, and 2016].

Plaintiff(s) select(s) and indicate(s) by completing where requested, the Parties and Causes of Actions specific to this case. Where certain claims require additional pleading or case specific facts and individual information, Plaintiff(s) shall add and include them herein.

Plaintiff(s), by counsel, allege as follows:

### I.   PARTIES, JURISDICTION, AND VENUE

**A. PLAINTIFF(S)**

1. Plaintiff(s) **GERALDO W. SCATENA** ("Plaintiff(s)") brings Applicable designation):

   [X]   On behalf of [himself];

- I -

2. Injured Party is currently a resident and citizen of (City, State) **Kailua-Kona, Hawaii,** and claims damages as set forth below.

If any party claims loss of consortium,

3. _____ ("Consortium Plaintiff") alleges damages for loss of consortium.

4. At the time of the filing of this Short Form Complaint, Consortium Plaintiff is a citizen and resident of (City, State) _____.

5. At the time the alleged injury occurred, Consortium Plaintiff resided in (City, State) _____.

**B. DEFENDANT(S)**

6. Plaintiff(s) name(s) the following Defendants from the Master Personal Injury Complaint in this action:

    a. **Brand Manufacturers:**
       **GlaxoSmithKline LLC;  Pfizer Inc.;**
       **Boehringer Ingelheim USA Corp.**

    b. **Generic Manufacturers:**

    c. **Distributors:**

    d. **Retailers:**
       **Costco Wholesale Corporation; Rite Aid Corporation**

    e. **Repackagers:**

    f. **Others Not Named in the MPIC:**

**C. JURISDICTION AND VENUE**

7.    Identify the Federal District Court in which Plaintiff(s) would have filed this action in the absence of Pretrial Order No. 11 (direct filing) [or, if applicable, the District Court to which their original action was removed]:   **Original action filed in District Court of Hawaii**

8.    Jurisdiction is proper upon diversity of citizenship,

## II.    PRODUCT USE

9.    The Injured Party used Zantac and/or generic ranitidine: *[Check all that apply]*

☒   By prescription

☒   Over the counter

10.   The Injured Party used Zantac and/or generic ranitidine from approximately (month, year) **January 1984** to **July 2019.**

## III.    PHYSICAL INJURY

11.   As a result of the Injured Party's use of the medications specified above, *[he/she]* was diagnosed with the following specific type of cancer (check all that apply):

| Check all that apply | | Cancer Type | Approximate Date of Diagnosis |
|---|---|---|---|
| | | BLADDER CANCER | |
| | | BRAIN CANCER | |
| | | BREAST CANCER | |
| | | COLORECTAL CANCER | |
| | | ESOPHAGEAL/THROAT/NASAL CANCER | — |
| | | INTESTINAL CANCER | |
| X | | KIDNEY CANCER | August 2017 |
| | | LIVER CANCER | |
| | | LUNG CANCER | |
| | | OVARIAN CANCER | |
| | | PANCREATIC CANCER | |
| | | PROSTATE CANCER | |
| | | STOMACH CANCER | |

- 3 -

| | | |
|---|---|---|
| ☐ | TESTICULAR CANCER | |
| ☐ | THYROID CANCER | |
| ☐ | UTERINE CANCER | |
| ☐ | OTHER CANCER: | |
| ☐ | DEATH (CAUSED BY CANCER) | |

12. Defendants, by their actions or inactions, proximately caused the injuries to Plaintiff(s).

### IV.   CAUSES OF ACTION ASSERTED

13. The following Causes of Action asserted in the Master Personal Injury Complaint are asserted against the specified defendants in each class of Defendants enumerated therein, and the allegations with regard thereto are adopted in this Short Form Complaint by reference.

| Check if Applicable | COUNT | Cause of Action |
|---|---|---|
| X | I | STRICT PRODUCTS LIABILITY - FAILURE TO WARN |
| X | II | STRICT PRODUCTS LIABILITY - DESIGN DEFECT |
| X | III | STRICT PRODUCTS LIABILITY - MANUFACTURING DEFECT |
| X | IV | NEGLIGENCE- FAILURE TO WARN |
| | V | NEGLIGENT PRODUCT DESIGN |
| | VI | NEGLIGENT MANUFACTURING |
| X | VII | GENERAL NEGLIGENCE |
| | VIII | NEGLIGENT MISREPRESENTATION |
| X | IX | BREACH OF EXPRESS WARRANTIES |
| X | X | BREACH OF IMPLIED WARRANTIES |
| | XI | VIOLATION OF CONSUMER PROTECTION AND DECEPTIVE TRADE PRACTICES LAWS and specify the state's statute below: |

| Check if Applicable | COUNT | Cause of Action |
|---|---|---|
|  |  |  |
|  | XII | UNJUST ENRICHMENT |
|  | XIII | LOSS OF CONSORTIUM |
|  | XIV | SURVIVAL ACTION |
|  | XV | WRONGFUL DEATH |
|  | XVI | OTHER: |
|  | XVII | OTHER: |

If Count XVI or Count XVII is alleged, additional facts supporting the claim(s):

_____

_____

_____

## V.    JURY DEMAND

14.    Plaintiff(s) hereby demand(s) a trial by jury as to all claims in this action.

## VI.    PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff(s) has/have been damaged as a result of Defendants' actions or

inactions and demand(s) judgment against Defendants on each of the above-referenced causes of

action, jointly and severally to the full extent available in law or equity, as requested in the Master

Personal Injury Complaint.

DATED:  Honolulu, Hawaii, April 26, 2022.

BY:  /s/Michael F. O'Connor
_____
    **MICHAEL F. O'CONNOR, ESQ.**
     **Attorney for Plaintiff GERALDO W. SCATENA**
    **Ogawa Lau Nakamura & Jew**
    **707 Richards Street, Suite 600**
    **Honolulu, Hawaii 96813**
    **(808) 533-3999**
    **(808) 533-0144**
    **Email: mfoconnor@ollon.com**

# Exhibit 4

# PRINTABLE CASE VIEW

**Generated: 11-APR-2023 05:43 AM**

**Search Criteria: Case ID or Citation Number: 3CCV-22-0000355**

**1 record(s) total**

| | | |
|---|---|---|
| **Case ID:** 3CCV-22-0000355 - GERALDO W. SCATENA v. BOEHRINGER INGELHEIM, ETC.<br>**Type:** CV - Circuit Court Civil<br>**Status:** ACTIVE - Active Case<br>**Last Updated:** 23-Mar-2023 | **Filing Date:** FRIDAY, OCTOBER 28, 2022<br>**Court:** THIRD CIRCUIT<br>**Location:** KONA DIVISION | |

**Related Cases**

No related cases were found.

**Case Parties**

| Seq # | Assoc | End Date | Type | ID | Name / Aliases |
|---|---|---|---|---|---|
| 1 | Scatena, Geraldo W | | Attorney | A1098 | O'connor, Michael F. |
| 2 | O'connor, Michael F. | | Plaintiff | @6232613 | Scatena, Geraldo W |
| 3 | | | Defendant | @6232616 | Boehringer Ingelheim Pharmaceuticals |
| 4 | | | Defendant | @6232617 | Pfizer, Inc. |
| 5 | | | Defendant | @6232618 | Glaxosmith Kline, LLC. |
| 6 | | | Defendant | @6232620 | Costco Wholesale Corporation |
| 7 | | | Defendant | @6232629 | Rite Aid Corporation |

**Bail / Bond Information**

No Bails were found.

**Events**

No Case Events were found.

**Dockets**

| Docket # | Date | Docket | Document Name | Parties | Filing Party |
|---|---|---|---|---|---|

| 1 | 10/28/2022 | Complaint and Summons EFile Document upload of type Complaint and Summons | Complaint; Summons | Geraldo W Scatena - Plaintiff | O'connor, Michael F., Scatena, Geraldo W |
| 2 | 10/28/2022 | Civil Information Sheet EFile Document upload of type Civil Information Sheet | CIVIL INFORMATION SHEET | Geraldo W Scatena - Plaintiff | O'connor, Michael F., Scatena, Geraldo W |
| 4 | 10/28/2022 | Payment Due to Court | | Michael F O'connor - Attorney | |
| 6 | 10/31/2022 | New Case Assignment Judge Wendy M. Deweese (Division 4) 808-322-8755 or email at 4thdivisionsched.3ccourts.hawaii.gov | | Geraldo W Scatena - Plaintiff  Boehringer Ingelheim Pharmaceuticals - Defendant  Pfizer, Inc. - Defendant  Glaxosmith Kline, LLC. - Defendant  Costco Wholesale Corporation - Defendant  Rite Aid Corporation - Defendant | |
| 8 | 11/02/2022 | Payment Payment by Credit Card-Civil in the amount of $315.00 by O''connor, Michael F. | | Michael F O'connor - Attorney | |
| 9 | 03/23/2023 | Return of Service EFile Document upload of type Return of Service or Summons | Return of Service | Geraldo W Scatena - Plaintiff | O'connor, Michael F. |
| 11 | 03/23/2023 | Return of Service EFile Document upload of type Return of Service or Summons | Return of Service | Geraldo W Scatena - Plaintiff | O'connor, Michael F. |

OGAWA, LAU, NAKAMURA & JEW
Attorneys at Law
A Law Corporation
MICHAEL F. O'CONNOR        1098-0
Suite 600, Richards Building
707 Richards Street
Honolulu, HI 96813
Telephone: (808) 533-3999
mfoconor@ollon.com

Electronically Filed
THIRD CIRCUIT
3CCV-22-0000355
28-OCT-2022
04:14 PM
Dkt. 1 CMPS

IN THE CIRCUIT COURT OF THE THIRD CIRCUIT

STATE OF HAWAII

| | | |
|---|---|---|
| GERALDO W. SCATENA, | ) | CIVIL NO. _ _ _ _ _ _ |
| | ) | |
| Plaintiff, | ) | **COMPLAINT; SUMMONS** |
| vs. | ) | |
| | ) | |
| BOEHRINGER INGELHEIM | ) | |
| PHARMACEUTICALS, INC., a | ) | |
| Delaware corporation; PFIZER, INC., a | ) | |
| Delaware corporation; GLAXOSMITH | ) | |
| KLINE, LLC., a Delaware company, | ) | |
| COSTCO WHOLESALE | ) | |
| CORPORATION; a Washington | ) | |
| corporation; RITE AID | ) | |
| CORPORATION, a Pennsylvania | ) | |
| corporation, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

8913-001

## **COMPLAINT**

COMES NOW the Plaintiff, GERALDO W. SCATENA, by and through his

counsel of record, MICHAEL F. O'CONNOR of OGAWA, LAU, NAKAMURA

& JEW, and alleges the following complaint against the Defendants above

named as follows:

## I.    **INTRODUCTION**

1.      N-Nitrosoethylamine ("NDMA") is a potent carcinogen.  It used to be a chemical byproduct of making rocket fuel in the early 1900s b ut, today, its only use is to induce tumors animals as part of laboratory experiments.  Its only function is to cause cancer.   It has no business being in a human body.

2.      Zantac, chemically known as ranitidine, the popular antacid medication used by millions of people  every day, leads to the production of staggering amounts ofNDMA when it is digested by the human body.   The U.S. Food and Drug Administration's ("FDA") allowable daily limit ofNDMA is 96 ng (nanograms) and yet, in a single dose of Zantac, researchers are discovering over 3 million ng.

3.      These recent revelations by independent researchers have caused widespread recalls of Zantac both domestically and internationally, and the FDA is actively investigating the issue, with is preliminary results showing "unacceptable" levels of NDMA.   Indeed, the current owner and controller of the Zantac new drug applications ("NDAs") has recalled all Zantac in the United States.

4.    To be clear, this is not a contamination case-the levels of NDMA that researchers are seeing in Zantac is not the product of some manufacturing error.    The high levels ofNDMA observed in Zantac is a function of the ranitidine molecule and the way it breaks down in the human digestive system.

5.    Plaintiff Gerald W. Scatena took Zantac for about 35 years and, as a result, developed kidney cancer.   His cancer was caused by NDMA exposure created by the ingestion of Zantac. This lawsuit seeks damages against the Defendants for causing his cancer.

## II.    PARTIES

6.    Plaintiff Gerald> W. Scatena (hereinafter "Plaintiff) resides in Kailua-Kona, Hawaii and is citizen of Hawaii and not of any other state.

7.    Defendant Boehringer Ingelheim Pharmaceuticals, Inc. ("BI") is a Delaware corporation with its principal place of business located at 900 Ridgebury Road, Ridgefield, Connecticut 06877.   BI is a citizen of Connecticut and Delaware, and not of any other state. BI is a subsidiary of the German company Boehringer Ingelheim Corporation. BI owned and controlled the NDA for over-the-counter ("OTC") Zantac between December 2006 and January 2017, and manufactured and distributed the drug in the United States during that period.

3

9. Defendant Pfizer, Inc. ("Pfizer") is a Delaware corporation with its principal place of business located at 235 East 42nd Street, New York, New York 10017.   Pfizer is a citizen of Delaware and New York and is not a citizen of any other state. In 1993, Glaxo Wellcome, plc formed a joint venture with Warner-Lambert, Inc. to develop and obtain OTC approval for Zantac. That OTC approval was obtained in 1995. In 1997, Warner-Lambert and Glaxo Wellcome ended their joint venture, with Warner-Lambert retaining control over the OTC NDA for Zantac and the Zantac trademark in the U.S. and Glaxo Welcome retaining control over the Zantac trademark internationally.   In 2000, Warner-Lambert was acquired by Pfizer, who maintained control over the Zantac OTC NDA until December 2006.

10.     Defendant GlaxoSmithKline, LLC ("GSK") is a Delaware company with its principal place of business located at 5 Crescent Drive, Philadelphia, Pennsylvania, 19112 and Five Moore Drive, Research Triangle, North Carolina, 27709. GSK is a wholly owned subsidiary of GlaxoSmithKline, plc, which is its sole member.   GlaxoSmithKline, plc is a citizen of the United Kingdom, and is not a citizen of any state in the United States.   GlaxoSmithKline plc is the successor-in-interest to the companies that initially developed, patented, and commercialized the molecule known as ranitidine.

Ranitidine was initially developed by Alien & Hanburys Ltd., which was a subsidiary of Glaxo Labs Ltd.    Alien & Hanburys Ltd. was awarded Patent No. 4,128,658 by the U.S. Patent and Trademark Office in December 1978, which covered the ranitidine molecule. In 1983, Glaxo Holdings, Ltd. was awarded approval by the U.S.F DA to sell Zantac in the United States. Glaxo Holdings, Ltd. was later absorbed into Glaxo Wellcome, plc. And then, in 2000, GlaxoSmithlaine, plc and GSK were created by the merger of Glaxo Wellcome and SmithKline Beecham. GSK, and its predecessors, controlled the prescription Zantac NDA between 1983 and 2009.

11.    Defendant Costco Wholesale Corporation ("Costco") is a Washington corporation that wholesales and distributes ranitidine tablets for acid reduction. Costco is registered to do business in Hawaii and has numerous outlets located in Hawaii.

12.    Defendant Rite Aid Corporation ("Rite Aid") is a Pennsylvania corporation that retails and distributes ranitidine for acid reduction.  Rite Aid is not registered to do business in Hawaii but is licensed to do business in California.

## III.   JURISDICTION AND VENUE

13.    This Court has subject matter jurisdiction pursuant to H.R.S. § 603-21.5

5

14.     This Court has personal jurisdiction over each Defendant insofar as each Defendant is authorized and licensed to conduct business in the State of Hawaii, maintains and carries on systematic and continuous contacts in this judicial district, regularly transacts business within this judicial district, and regularly avails itself of the benefits of this judicial district.

15.     Additionally, the Defendants caused tortious injury by acts and omissions in this judicial district and caused tortious injury in this district by acts and omissions outside this district while regularly doing and soliciting business, engaging in a persistent course of conduct, and deriving substantial revenue from goods used or consumed and services rendered in this judicial district. The Plaintiff was, indeed, exposed to Zantac in this judicial district.

16.     Venue is proper before this Court pursuant to H.R.S. § 603-36 because a substantial part of the events or omissions giving rise to this claim occurred within the County of Hawaii.

## IV.    PLAINTIFF SPECIFIC ALLEGATIONS

17.     Plaintiff begun using over-the-counter brand name Zantac and other ranitidine tablets (hereinafter collectively referred to as "Zantac") from about 1998 and continued to use it through 2019.    He took 150 mg. 3 or 4 times per week.    He purchased these products in Hawaii and California.

In August 2018, Plaintiff was diagnosed with malignant neoplasm of left kidney.

18.    Based on prevailing scientific evidence, exposure to Zantac (and the attendant NDMA) can cause kidney cancer in humans.

19.    Plaintiffs cancer was caused by ingestion of Zantac.

20.    Had any Defendant warned Plaintiff that Zantac could lead to exposure to NDMA or, in turn, cancer, Plaintiff would not have taken Zantac.

21.    Plaintiff did not learn of the link between his cancer and Zantac exposure until sometime in 2019, when he learned that Zantac contained high levels of NDMA in an online article.

22.    After being diagnosed with cancer, Plaintiff investigated what could have caused his cancer, but to no avail until recently when he heard about the connection of Zantac to NDMA and cancer.

## V.    <u>CAUSES OF ACTION</u>

## <u>COUNT I: STRICT LIABILITY  - DESIGN DEFECT</u>

23.    Plaintiff incorporates by reference each allegation set forth in preceding paragraphs as if fully stated herein.

24.    Plaintiff brings this strict liability claim against Defendants for defective design.

25.    At all relevant times, Defendants engaged in the business attesting,
developing, designing, manufacturing, marketing, selling, distributing, and
promoting Zantac products, which are defective and unreasonably dangerous to
consumers, including Plaintiff, thereby placing Zantac products into the stream of
commerce.  These actions were under the ultimate control and supervision of
Defendants.  At all relevant times, Defendants designed, researched, developed,
manufactured, produced, tested, assembled, labeled, advertised, promoted,
marketed, sold, and distributed the Zantac products used by Plaintiff, as described
herein.

26.    At all relevant times, Defendants' Zantac products were
manufactured, designed, and labeled in an unsafe, defective, and inherently
dangerous manner that was dangerous for use by or exposure to the public.

27.    At all relevant times, Defendants' Zantac products reached the
intended consumers, handlers, and users or other persons coming into contact with
these products within this judicial district and throughout the United States, including
Plaintiff, without substantial change in their condition as designed, manufactured, sold,
distributed, labeled, and marketed by Defendants.    At all relevant times, Defendants
registered, researched, manufactured, distributed, marketed and sold Zantac products
within this judicial district and aimed at a consumer market within this judicial district.

Defendants were at all relevant times involved in the retail and promotion of Zantac

products marketed and sold in this judicial district.

28.    Defendants' Zantac products, as researched, tested, developed, designed,

licensed, manufactured, packaged, labeled, distributed, sold, and marketed by

Defendants were defective in design and formulation in that, when they left the control

of Defendants' manufacturers and/or suppliers, they were unreasonably dangerous and

dangerous to an extent beyond that which an ordinary consumer would contemplate.

29.    Defendants' Zantac products, as researched, tested, developed, designed,

licensed, manufactured, packaged, labeled, distributed, sold, and marketed by

Defendants were defective in design and formulation in that, when they left the hands

of Defendants'  were defective in design and formulation in that, when they left the

hands of Defendants' manufacturers and/or suppliers, the foreseeable risks exceeded

the alleged benefits associates with their design and formulation.

30.    At all relevant times, Defendants knew or had reason to know that Zantac

products were defective and were inherently dangerous and unsafe when used in the

manner instructed and provided by Defendants.

31.    As a direct and proximate result of this design defect, Plaintiff was

injured and has sustained pecuniary loss resulting and general damages in a sum

exceeding the jurisdictional minimum of this Court.

32.    As proximate result of this design defect, as alleged herein, there was a measurable and significant interval of time during which Plaintiff suffered great mental anguish and other personal injury and damage.

33.    As a proximate result of Defendant's design defect, as alleged herein, Plaintiff sustained loss of income and/or loss of earning capacity.

## COUNT II: STRICT LIABILITY - FAILURE TO WARN

34.    Plaintiff incorporates by reference each allegation set forth in preceding paragraphs as if fully stated herein.

35.    Plaintiff brings this strict liability claim against Defendants for failure to warn.

36.    At all relevant times, Defendants engaged in the business of testing, developing, designing, manufacturing, marketing, selling, distributing, and promoting Zantac products which are defective and unreasonably dangerous to consumers, including Plaintiff, because they do not contain adequate warnings or instructions concerning the dangerous characteristics of Zantac and NDMA.    These actions were under the ultimate control and supervision of Defendants. At all relevant times, Defendants registered, researched, manufactured, distributed, marketed, and sold Zantac and other ranitidine formulations within this judicial district and aimed at a consumer market. Defendants were at all relevant times involved in the retail and promotion of Zantac products marketed and sold in this judicial district.

10

37.    Defendants researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold, and otherwise released into the stream of commerce its Zantac products, and in the course of same, directly advertised or marketed the products to consumers and end users, including Plaintiff, and therefore had a duty to warn of the risks associated with the use of Zantac products.

38.    At all relevant times, Defendants had a duty to properly test, develop, design, manufacture, inspect, package, label, market, promote, sell, distribute, maintain, supply, provide proper warnings, and take such steps as necessary to ensure its Zantac products did not cause users and consumers to suffer from unreasonable and dangerous risks. Defendants had a continuing duty to warn Plaintiff of dangers associated with Zantac. Defendants, as a manufacturer, seller, or distributor of pharmaceutical medication, are held to the knowledge of an expert in the field.

39.    At the time of manufacture, Defendants could have provided the warnings or instructions regarding the full and complete risks of Zantac products because they lmew or should have lmown the unreasonable risks of harm associated with the use of and/or exposure to such products.

40.    At all relevant times, Defendants failed and deliberately refused to investigate, study, test, or promote the safety or to minimize the dangers to users and consumers of their product and to those who would foreseeably use or be harmed by

11

Defendants ' Zantac products, including Plaintiff.

41.    Even though Defendants knew or should have known that Zantac posed a grave risk of harm, they failed to exercise reasonable care to warn of the dangerous risks associated with use and exposure. The dangerous propensities of their products and the carcinogenic characteristics of NDMA as produced within the human body as a result of ingesting Zantac, as described above, were known to Defendants, or scientifically knowable to Defendants through appropriate research and testing by known methods, at the time they distributed, supplied or sold the product, and were not known to end users and consumers, such as Plaintiff.

42.    Defendants knew or should have lmown that their products created significant risks of serious bodily harm to consumers, as alleged herein, and Defendants failed to adequately warn consumers, i.e., the reasonably foreseeable users, of the risks of exposure to its products. Defendants have wrongfully concealed information concerning the dangerous nature of Zantac and the potential for ingested Zantac to transform into the carcinogenic NDMA compound, and farther, have made false and/or misleading statements concerning the safety of Zantac products.

43.    At all relevant times. Defendants' Zantac products reached the intended consumers, handlers, and users or other persons coming into contact with these products within this judicial district and throughout the United

12

States, including Plaintiff, without substantial change in their condition as

designed, manufactured, sold, distributed, labeled, and marketed by

Defendants.

44.    Plaintiff was exposed to Defendants' Zantac products without

knowledge of their dangerous characteristics.

45.    As a direct and proximate result of Defendants placing defective

Zantac products into the stream of commerce, Plaintiff was injured and has

sustained pecuniary loss resulting and general damages in a sum exceeding the

jurisdictional minimum of this Court.

46.    As a direct and proximate result of the failure to warn Plaintiff,

Plaintiff was injured and has sustained pecuniary loss resulting and general

damages in a sum exceeding the jurisdictional minimum of this Court.

47.    As a proximate result of Defendants placing defective Zantac products

into the stream of commerce, as alleged herein, there was a measurable and

significant interval of time during which Plaintiff suffered great mental anguish

and other personal injury and damages.

48.    As a proximate result of Defendants placing defective Zantac products

into the stream of commerce, as alleged herein, Plaintiff sustained loss of income

and/or loss of earning capacity.

**COUNT** III: **NEGLIGENCE**

49.    Plaintiff incorporates by reference each allegation set forth in preceding paragraphs as is fully stated herein.

50.    Defendants, directly or indirectly, caused Zantac products to be sold, distributed, packaged, labeled, marketed, promoted, and/or used by Plaintiff.  At all relevant time, Defendants registered, researched, manufactured, distributed, marketed and sold Zantac within this judicial district and aimed at a consumer market within this district.

51.    At all relevant times, Defendants had a duty to exercise reasonable care in the design, research, manufacture, marketing, advertisement, supply, promotion, packing, sale, and distribution of Zantac products, including the duty to take all reasonable steps necessary to manufacture, promote, and/or sell product that was not unreasonably dangerous to consumers and users of the product.

52.    At all relevant times, Defendants had a duty to exercise reasonable care in the marketing, advertisement, and sale of the Zantac products.  Defendants' duty of care owed to consumers and the general public included providing accurate, true, and correct information concerning the risks of using Zantac and appropriate, complete and accurate warnings concerning the potential adverse effects of Zantac and, in particular, its ability to transform into the carcinogenic compound NDMA.

14

53.    At all relevant times, Defendants knew or, in the exercise of reasonable care, should have known of the hazards and dangers of Zantac and, specifically, the carcinogenic properties of NDMA when Zantac is ingested.

54.    Accordingly, at all relevant times, Defendants knew or, in the exercise of reasonable care, should have known that use of Zantac products could cause or be associated with Plaintiffs injuries, and thus, create a dangerous and -unreasonable risk of injury to the users of these products, including Plaintiff.

55.    Defendants also knew or, in the exercise of reasonable care, should have known that users and consumers of Zantac were unaware of the risks and the magnitude of the risks associated with use of Zantac.

56.    As such, Defendants breached their duty of reasonable care and failed to exercise ordinary care in the design, research, development, manufacture, testing, marketing, supply, promotion, advertisement, packaging, sale, and distribution of Zantac products, in that Defendants manufactured and produced defective Zantac which carries the potential to transform into the carcinogenic compound NDMA; knew or had reason to know of the defects inherent in its products; knew or had reason to know that a user's or consumer's use of the products created a significant risk of harm and unreasonably dangerous side effects; and failed to prevent or adequately warn of these risks and injuries.   Indeed, Defendants deliberately refused to test Zantac products because they knew that the chemical posed serious health risks to humans.

57.    Defendants were negligent in their promotion of Zantac, outside of the labeling context, by failing to disclose material risk information as part of their promotion and marketing of Zantac, including the internet, television, print advertisements, etc.    Nothing prevented Defendants from being honest in their promotional activities, and, in fact, Defendants had a duty to disclose the truth about the risks associated with Zantac in their promotional efforts, outside of the context of labeling.

58.    Despite their ability and means to investigate, study, and test the products and to provide adequate warnings, Defendants failed to do so.  Indeed, Defendants wrongfully concealed information and further made false and/or misleading statements concerning the safety and use of Zantac.

59.    As a direct and proximate result of Defendants negligent conduct as alleged herein, Plaintiff was injured and has sustained pecuniary loss resulting and general damages in a sum exceeding the jurisdictional minimum of this Court.

60.    As a direct and proximate result of Defendants negligent conduct as alleged herein, there was a measurable and significant interval of time during which Plaintiff suffered great mental anguish and other personal injury and damages.

16

61.    As a proximate result of Defendants alleged conduct as alleged herein, Plaintiff sustained loss of income and/or loss of earning capacity.

62.    Plaintiff incorporates by reference each allegation set forth in preceding paragraphs as if fully stated herein.

63.    At all relevant times, Defendants engaged in the business of testing, developing, designing, manufacturing, marketing, selling, distributing, and promoting Zantac products, which are defective and unreasonably dangerous to consumers, including Plaintiff, thereby placing Zantac products into the stream of commerce. These actions were under the ultimate control and supervision of Defendants.

64.    Defendants had a duty to exercise reasonable care in the research, development, design, testing, packaging, manufacture, inspection, labeling, distributing, marketing, promotion, sale, and release of Zantac products, including a duty to:

    a.    ensure that its products did not cause the user unreasonably dangerous side effects;

    b.    warn of dangerous and potentially fatal side effects; and

    c.    disclose adverse material facts, such as the true risks associated with the use of and exposure to Zantac, when making representations to consumers and the general public, including Plaintiff.

17

65.    As alleged throughout this pleading, the ability of Defendants to properly disclose those risks associated with Zantac is not limited to representations made on the labeling.

66.    At all relevant times, Defendants expressly represented and warranted to the purchasers of its products, by and through statements made by Defendants in labels, publications, package inserts, and other written materials intended for consumers and the general public, that Zantac products were safe to human health and the environment,\ effective, fit, and proper for their intended use.  Defendants advertised, labeled, marketed, and promoted Zantac products, representing the quality to consumers and the public in such a way as to induce their purchase or use, thereby making an express warranty that Zantac products would conform to the representations.

67.    These express representations include incomplete warnings and instructions that purport, but fail, to include the complete array of risks associated with use of and/or exposure to Zantac.   Defendants knew and/or should have known that the risks expressly included in Zantac warnings and labels did not and do not accurately or adequately set forth the risks of developing the serious injuries complained of herein.  Nevertheless, Defendants expressly represented that Zantac

products were safe and effective, that they were safe and effective for use by

individuals such as the Plaintiff, and/or that they were safe and effective as

consumer medication.

68.    The representations about Zantac, as set forth herein, contained or

constituted affirmations of fact or promises made by the seller to the buyer, which

related to the goods and became part of the basis of the bargain, creating an express

warranty that the goods would conform to the representations.

69.    Defendants placed Zantac products into the stream of commerce for sale

and recommended their use to consumers and the public without adequately warning

of the true risks of developing the injuries associated with the use of Zantac.

70.    Defendants breached these warranties because, among other things,

Zantac products were defective, dangerous, and unfit for use, did not contain labels

representing the true and adequate nature of the risks associated with their use, and

were not merchantable or safe for their intended, ordinary, and foreseeable use and

purpose.   Specifically, Defendants breached the warranties in the following ways:

a.    Defendants represented through its labeling, advertising, and

marketing materials that Zantac products were safe, and intentionally withheld and

concealed information about the risks of serious injury associated with use of

Zantac and by expressly limiting the risks associated with use within its warnings

and labels; and

19

b.    Defendants represented that Zantac products were safe for use and intentionally concealed information that demonstrated that Zantac, by transforming into NDMA upon human ingestion, had carcinogenic properties, and that Zantac products, therefore, were not safer than alternatives available on the market.

71.    Plaintiff detrimentally relied on the express warranties and representations of Defendants concerning the safety and/or risk profile of Zantac in deciding to purchase the product. Plaintiff reasonably relied upon Defendants to disclose known defects, risks, dangers, and side effects of Zantac. Plaintiff would not have purchased or used Zantac had Defendants properly disclosed the risks associated with the product, either through advertising, labeling, or any other disclosure.

72.    As a direct and proximate result of Defendants' breach of express warranty, Plaintiff has sustained pecuniary loss and general damages in a sum exceeding the jurisdictional minimum of this Court.

73.    As a proximate result of Defendants' breach of express warranty, as alleged herein, there was a measurable and significant interval of time during which Plaintiff suffered great mental anguish and other personal injury and damages.

74.    As a proximate result of Defendants' breach of express warranty, as alleged herein, Plaintiff sustained a loss of income and/or loss of earning capacity.

**COUNT V: BREACH OF IMPLIED WARRANTIES**

75.    Plaintiff incorporates by reference each allegation set forth in preceding paragraphs as if fully stated herein.

76.    At all relevant times, Defendants engaged in the business of testing, developing, signing, manufacturing, marketing, selling, distributing, and promoting Zantac products, which were and are defective and unreasonably dangerous to consumers, including Plaintiff, thereby placing Zantac products into the stream of commerce.

77.    Before the time Plaintiff used Zantac products.    Defendants impliedly warranted to its consumers, including Plaintiff, that Zantac products were of merchantable quality and safe and fit for the use for which they were intended; specifically, as consumer medication.

78.    But Defendants failed to disclose that Zantac has dangerous propensities when used as intended and that use of Zantac products carries an increased risk of developing severe injuries, including Plaintiffs injuries.

79.    Plaintiff was an intended beneficiary of the implied warranties made by Defendants to purchasers of its Zantac products.

80.    The Zantac products were expected to reach and did in fact reach consumers and users, including Plaintiff, without substantial change in the

21

condition in which they were manufactured and sold by Defendants.

81.    At all relevant times, Defendants were aware that consumers and users of

its products, including Plaintiff, would use Zantac products as marketed by Defendants,

which is to say that Plaintiff was a foreseeable user of Zantac.

82.    Defendants intended that Zantac products be used in the manner in which

Plaintiff, in fact, used them and which Defendants impliedly warranted to be of

merchantable quality, safe, and fit for this use, even though Zantac was not adequately

tested or researched.

83.    In reliance upon Defendants' implied warranty, Plaintiff used Zantac as

instructed and labeled and in the foreseeable manner intended, recommended, promoted,

and marketed by Defendants.

84.    Plaintiff could not have reasonably discovered or known of the risks of

serious injury associated with Zantac.

85.    Defendants breached their implied warranty to Plaintiff in that Zantac

products were not of merchantable quality, safe, or fit for their intended use, or

adequately tested. Zantac has dangerous propensities when used as intended and can

cause serious injuries, including those injuries complained of herein.

86.     The harm caused by Defendants' Zantac products far outweighed their benefit, rendering the products more dangerous than an ordinary consumer or user would expect and more dangerous than alternative products.

87.     As a direct and proximate result of Defendants' breach of implied warranty, Plaintiff has sustained pecuniary loss and general damages in a sum exceeding the jurisdictional minimum of this Court.

88.     As a proximate result of the Defendants' breach of implied warranty, as alleged herein, there was a measurable and significant interval of time during which Plaintiff suffered great mental anguish and other personal injury and damages.

89.     As a proximate result of Defendants' breach of implied warranty, as alleged herein, Plaintiff sustained a loss of income and/or loss of earning capacity.

## COUNT VI: EXEMPLARY/PUNITIVE DAMAGES

90.     Defendants' conduct as alleged herein was done with reckless disregard for human life, oppression, and malice. Defendants were fully aware of the safety risks of Zantac, particularly the carcinogenic potential of Zantac as it transforms into NDMA within the chemical environment of the human body. Nonetheless, Defendants deliberately crafted their label, marketing, and promotion to mislead consumers.

23

91.    This was not done by accident or through some justifiable negligence.

Rather,  Defendants knew that it could turn a profit by convincing consumers that

Zantac was harmless to humans, and that full disclosure of the true risks of Zantac

would limit the amount of money Defendants would make selling Zantac.

Defendants' Defendants' object was accomplished not only through its misleading label,

but through a comprehensive scheme of selective misleading research and testing, false

advertising, and deceptive omissions as more fully alleged throughout this pleading.

Plaintiff was denied the right to make an informed decision about whether to purchase

and use Zantac, knowing the full risks attendant to that use.    Such conduct was done

with conscious disregard of Plaintiffs rights.

92.    Accordingly, Plaintiff requests punitive damages against

Defendants for the harm caused to Plaintiff.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays for the following relief:

(1)    That the Court award Plaintiff, judgment against Defendants, in such

sums as shall be determined to fully and fairly compensate them for all general, and

special damages incurred, or to be incurred, as the direct and proximate result of the

acts and omissions of Defendants, in an amount to be proven at trial;

(2)    That the Court award Plaintiff exemplary or punitive damages;

(3)    That the Court award Plaintiff his respective costs, disbursements and

reasonable attorneys' fees incurred;

24

(4)     That the Court award Plaintiff the opportunity to amend or modify the provisions of this complaint as necessary or appropriate after additional or further discovery is completed in this matter, and after all appropriate parties have been served; and

(5)     That the Court award Plaintiff such other and further relief as it deems necessary and proper in the circumstances.

DATED:  Honolulu, Hawaii, October 28, 2022.


/s/MICHAEL F. O'CONNOR
MICHAEL F. O'CONNOR
Attorney for Plaintiff
GERALDO W. SCATENA

25

| **STATE OF HAWAI'I**<br>CIRCUIT COURT OF THE<br>THIRD CIRCUIT | **SUMMONS**<br>TO ANSWER CIVIL COMPLAINT | CASE NUMBER |
|---|---|---|

| PLAINTIFF<br><br>GERALDO W. SCATENA | VS. | DEFENDANT(S)<br><br>BOEHRINGER INGELHEIM PHARMACEUTICALS, INC., a Delaware corporation; PFIZER, INC., a Delaware corporation; GLAXOSMITH KLINE, LLC., a Delaware company; COSTCO WHOLESALE CORPORATION, a Washington corporation; RITE AID CORPORATION, a Pennsylvania corporation |
|---|---|---|

PLAINTIFF'S NAME & ADDRESS, TEL. NO.

MICHAEL F. O'CONNOR, #1098
Ogawa Lau Nakamura & Jew
707 Richards Street, Suite 600, Richards Building
Honolulu, Hawaii 96813
Telephone No.: (808) 533-3999
mfoconnor@ollon.com

**TO THE ABOVE-NAMED DEFENDANT(S)**

You are hereby summoned and required to file with the court and serve upon

MICHAEL F. O'CONNOR ESQ., Ogawa Lau Nakamura & Jew, 707 Richards Street, Suite 600, Richards Building, Honolulu, Hawaii 96813

_____ ,

plaintiff's attorney, whose address is stated above, an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the date of service.  If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

**THIS SUMMONS SHALL NOT BE PERSONALLY DELIVERED BETWEEN 10:00 P.M. AND 6:00 A.M. ON PREMISES NOT OPEN TO THE GENERAL PUBLIC, UNLESS A JUDGE OF THE ABOVE-ENTITLED COURT PERMITS, IN WRITING ON THIS SUMMONS, PERSONAL DELIVERY DURING THOSE HOURS.**

**A FAILURE TO OBEY THIS SUMMONS MAY RESULT IN AN ENTRY OF DEFAULT AND DEFAULT JUDGMENT AGAINST THE DISOBEYING PERSON OR PARTY.**

| The original document is filed in the Judiciary's electronic case management system which is accessible via eCourt Kokua at: http://www.courts.state.hi.us | Effective Date of 28-Oct-2019<br>Signed by: /s/ Cheryl Salmo<br>Clerk, 3rd Circuit, State of Hawai'i |  |
|---|---|---|

 In accordance with the Americans with Disabilities Act, and other applicable state and federal laws, if you require a reasonable accommodation for a disability, please contact the ADA Coordinator at the Circuit Court Administration Office on HAWAII- Phone No. 808-961-7424, TTY 808-961-7422, FAX 808-961-7411, at least ten (10) working days prior to your hearing or appointment date.

Form 2-A.    **CIVIL INFORMATION SHEET**

| STATE OF HAWAI'I<br>CIRCUIT COURT OF THE<br>THIRD _____ CIRCUIT | **CIVIL INFORMATION SHEET** | <span style="color:red">**Electronically Filed<br>THIRD CIRCUIT<br>3CCV-22-0000365<br>28-OCT-2022<br>04:14 PM<br>Dkt. 2 CIS**</span> |
|---|---|---|

**I (A). PLAINTIFF(S)**

GERALDO W. SCATENA

☐ Additional page(s) attached

**I (B). DEFENDANT(S)**

BOEHRINGER INGELHEIM PHARMACEUTICALS, INC., a Delaware corporation; PFIZER, INC., a Delaware corporation; GLAXOSMITH KLINE, LLC., a Delaware company, COSTCO WHOLESALE CORPORATION, a Washington corporation; a Washington corporation; RITE AID CORPORATION, a Pennsylvania corporation

☐ Additional page(s) attached

**II.(A). PLAINTIFF'S(S') ATTORNEY (NAME/NUMBER)**

MICHAEL F. O'CONNOR, #1098
Ogawa, Lau, Nakamura & Jew
Suite 600, Richards Building,
707 Richards Street
Honolulu, Hawaii 96813

☐ Additional page(s) attached

**II.(B). DEFENDANT'S (S') ATTORNEY (NAME/NUMBER)**

☐ Additional page(s) attached

**III.  NATURE OF SUIT**

☐  Contract
☐  Motor Vehicle Tort
☐  Assault & Battery
☐  Construction Defects
☐  Medical Malpractice
☐  Legal Malpractice
☑  Product Liability
☑  Other Non-Vehicle Tort
☐  Condemnation
☐  Foreclosure
☐  Agreement of Sale Foreclosure
☐  Agency Appeal
☐  Declaratory Judgment
☐  Other Civil Action
☐  Environmental Court
☐  Asbestos
☐  Consumer Debt Collection
☐  Quiet Title

**IV. ORIGIN**

☑  (A). Original Proceeding
☐  (B). Transfer from District Court CIV. NO. _____
☐  (C). Transfer from another Circuit CIV. NO. _____

**V. DEMAND**

**VI.  JURY DEMAND**

☐  YES
☑  NO

**VII. CLASS ACTION**

☐  YES
☐  NO

**VIII. REQUEST TO EXEMPT FROM ARBITRATION**

☐  YES
☐  NO

**IX. RELATED CASE(S)**

JUDGE _____

CIVIL NUMBER _____

| DATE<br>October 28, 2022 | ATTORNEY NAME/PARTY NAME<br>MICHAEL F. O'CONNOR | SIGNATURE |
|---|---|---|

RESERVED FOR COURT USE

CIVIL NO.

In accordance with the Americans with Disabilities Act, and other applicable state and federal laws, if you require reasonable accommodation for a disability, please contact the ADA Coordinator at the Circuit Court Administration Office on OAHU-Phone No. 808-539-4400, TTY 808-539-4853, FAX, 539-4402; MAUI-Phone No. 808-244-2929, FAX 808-244-2777; HAWAII-Phone No. 808-961-7424, TTY 808-961-7422, FAX 808-961-7411; KAUAI-Phone No. 808-482-2365, TTY 808-482-2533, FAX 808-482-2509, at least ten (10) working days prior to your hearing or appointment date.

*(Rev. 08/__/21)*

# NOTICE OF ELECTRONIC FILING

**Electronically Filed
THIRD CIRCUIT
3CCV-22-0000355
28-OCT-2022
04:14 PM
Dkt. 3 NEF**

An electronic filing was submitted in Case Number 3CCV-22-0000355. You may review the filing through the Judiciary Electronic Filing System. Please monitor your email for future notifications.

| | |
|---|---|
| **Case ID:** | 3CCV-22-0000355 |
| **Title:** | GERALDO W. SCATENA v. BOEHRINGER INGELHEIM PHARMACEUTICALS, INC., a Delaware corporation; PFIZER, INC., a Delaware corporation; GLAXOSIMITH KLINE, LLC., a Delaware company, COSTCO WHOLESALE CORPORATION, a Washington corporation; RITE AID CORPORATION, a Pennsylvania corporation |
| **Filing Date / Time:** | FRIDAY, OCTOBER 28, 2022 04:14:56 PM |
| **Filing Parties:** | Geraldo Scatena |
| | Michael O'connor |
| **Case Type:** | Circuit Court Civil |
| **Lead Document(s):** | 1-Complaint and Summons |
| **Supporting Document(s):** | 2-Civil Information Sheet |
| **Document Name:** | 1-Complaint; Summons |
| | 2-CIVIL INFORMATION SHEET |

If the filing noted above includes a document, this Notice of Electronic Filing is service of the document under the Hawai`i Electronic Filing and Service Rules.

---

This notification is being electronically mailed to:

Michael F. O'connor *( jaa@ollon.com )*

The following parties need to be conventionally served:

Rite Aid Corporation

Costco Wholesale Corporation

Glaxosmith Kline, LLC.

Pfizer, Inc.

Boehringer Ingelheim Pharmaceuticals

This filing type incurs a fee of $315.00. You must pay by credit card or in person.

Electronically Filed
THIRD CIRCUIT
3CCV-22-0000355
28-OCT-2022
04:14 PM
Dkt. 4 PYD

IN THE CIRCUIT COURT OF THE THIRD CIRCUIT
STATE OF HAWAI`I

| | |
|---|---|
| GERALDO W. SCATENA v. BOEHRINGER INGELHEIM, ETC. | CASE NO. 3CCV-22-0000355 PAYMENT DUE TO COURT |

PAYMENT DUE TO COURT

O'connor, Michael F. owes the following fees:

 $315.00    Complaint/Summons

The total amount due is $315.00. Make your payment to Circuit Court of the Third Circuit, 74-5451 Kamakaeha Ave, Kailua-Kona, HI, 96740 with this notice within ten (10) days of this notice.

If you do not pay the total amount due, your complaint will be dismissed or your document stricken.

You may file a request that the court waive the filing fees. If the court does not grant your request, you must pay the filing fees.

Dated: October 28, 2022

/s/ Cheryl Salmo
Clerk of the Court

# NOTICE OF ELECTRONIC FILING

**Electronically Filed
THIRD CIRCUIT
3CCV-22-0000355
28-OCT-2022
04:14 PM
Dkt. 5 NEF**

An electronic filing was submitted in Case Number 3CCV-22-0000355. You may review the filing through the Judiciary Electronic Filing System. Please monitor your email for future notifications.

|  |  |
|---|---|
| **Case ID:** | 3CCV-22-0000355 |
| **Title:** | GERALDO W. SCATENA v. BOEHRINGER INGELHEIM, ETC. |
| **Filing Date / Time:** | FRIDAY, OCTOBER 28, 2022 04:14:57 PM |
| **Filing Parties:** | |
| **Case Type:** | Circuit Court Civil |
| **Lead Document(s):** | |
| **Supporting Document(s):** | 4-Payment Due To Court |
| **Document Name:** | |

If the filing noted above includes a document, this Notice of Electronic Filing is service of the document under the Hawai`i Electronic Filing and Service Rules.

---

This notification is being electronically mailed to:

Michael F. O'connor ( jaa@ollon.com )

The following parties need to be conventionally served:

Rite Aid Corporation

Costco Wholesale Corporation

Glaxosmith Kline, LLC.

Pfizer, Inc.

Boehringer Ingelheim Pharmaceuticals

---

This filing type incurs a fee of $315.00. You must pay by credit card or in person.

# NOTICE OF ELECTRONIC FILING

**Electronically Filed
THIRD CIRCUIT
3CCV-22-0000355
31-OCT-2022
08:11 AM
Dkt. 7 NEF**

An electronic filing was submitted in Case Number 3CCV-22-0000355. You may review the filing through the Judiciary Electronic Filing System. Please monitor your email for future notifications.

|  |  |
|---|---|
| **Case ID:** | 3CCV-22-0000355 |
| **Title:** | GERALDO W. SCATENA v. BOEHRINGER INGELHEIM PHARMACEUTICALS, INC., a Delaware corporation PFIZER, INC., a Delaware corporation GLAXOSIMITH KLINE, LLC., a Delaware company, COSTCO WHOLESALE CORPORATION, a Washington corporation RITE AID CORPORATION, a Pennsylvania corporation |
| **Filing Date / Time:** | MONDAY, OCTOBER 31, 2022 08:11:23 AM |
| **Filing Parties:** | |
| **Case Type:** | Circuit Court Civil |
| **Lead Document(s):** | |
| **Supporting Document(s):** | 6-New Case Assignment |
| **Document Name:** | |

If the filing noted above includes a document, this Notice of Electronic Filing is service of the document under the Hawai`i Electronic Filing and Service Rules.

---

This notification is being electronically mailed to:

Michael F. O'connor *( jaa@ollon.com )*

The following parties need to be conventionally served:

Rite Aid Corporation

Costco Wholesale Corporation

Glaxosmith Kline, LLC.

Pfizer, Inc.

Boehringer Ingelheim Pharmaceuticals

**THIRD CIRCUIT**
**STATE OF HAWAIʻI**
**RECEIPT**

**Electronically Filed**
**THIRD CIRCUIT**
**3CCV-22-0000355**
**02-NOV-2022**
**12:36 PM**
**Dkt. 8 PY**

Case No:3CCV-22-0000355

RECEIVED FROM: O'connor, Michael F.

THE SUM OF: $315.00

DESCRIPTION: Payment by Credit Card

**RECEIPT NO:48382**

**02-NOV-2022**
**12:36 PM**

1. Complaint/Summons

      ADMN- ADMIN_FEE                                  $50.00
      CIND- INDIGENT_SURCHARGE                $65.00
      V002- Complaint/Summons                   $200.00

**TOTAL**                                            **$315.00**

 /s/Court Document Clerk

| STATE OF HAWAI'I<br>CIRCUIT COURT OF THE<br>THIRD CIRCUIT | RETURN AND ACKNOWLEDGMENT<br>OF SERVICE | **Electronically Filed<br>THIRD CIRCUIT<br>3CCV-22-0000355<br>23-MAR-2023<br>01:56 PM<br>Dkt. 9 ROS** |
|---|---|---|

CASE NUMBER

## 3CCV-22-0000355

CASE NAME

GERALDO W. SCATENA,
       Plaintiff,

vs.

BOEHRINGER INGELHEIM PHARMACEUTICALS, INC., a Delaware corporation et al.,

      Defendants,

DOCUMENTS SERVED: ___Notice of Case Not Accepted into the CAAP; Complaints/Summons; Civil Information Sheet___

I, Sheriff/Police Officer of the State of Hawai'i do hereby certify that I received a certified copy of the documents listed above and that I served the same on COSTCO WHOLESALE CORPORATION, a Washington Corporation ___(name of party)___
on 3/23/2023 at 0925 HRS. at 900 Fort St. Mall
___(date)___ ___(time)___
#1680 Hon. Hi. 96813 within the State of Hawai'i as follows:
___(address)___

☐ PERSONAL: By delivering to and leaving with _____, personally.

☐ SUBSTITUTE: [HRCP 4(d) (1) (A)] After due and diligent search and inquiry, I served above-named defendant through _____, a person of suitable age and discretion then residing at said party's usual place of abode, since the defendant could not be found.

☐ SUBSTITUTE: [HRCP 4(d) (1) (B)] I served above-named defendant through _____, authorized agent to receive service of process for said defendant.

☒ BUSINESS/CORPORATION/GOVERNMENTAL ENTITY: On COSTCO WHOLESALE CORPORATION, a Washington Corporation ___(name of business/corp/entity)___ by serving through CT Corporation System,/ Jo ~~Byrne~~ ,
___(name of person served)___
Byrne , who is the Agent and authorized agent
___(position/title)___
of said Business/Corporation/Governmental Entity.

☐ GARNISHMENT: I served _____ through _____
___(name of garnishee)___
_____ who is authorized to accept service for the above-named garnishee.
___(name of person served)___

☐ NOT FOUND: After due and diligent search and inquiry, I am unable to find _____,
___(name of party)___

| STATE OF HAWAI'I<br>CIRCUIT COURT OF THE<br>_____ CIRCUIT | RETURN AND ACKNOWLEDGMENT OF SERVICE<br>(Page 2) |
|---|---|

CASE NUMBER

CASE NAME

Attorney (Name, I.D. No., Address, Phone)

| Date:<br><br>3/23/2023 | Sheriff/Police Officer (type or print)<br><br>RICHARD K. MITCHELL | Signature |
|---|---|---|

| SUBSCRIBED AND SWORN<br>TO BEFORE ME THIS DATE:<br><br>IN _____, HAWAI'I | NOTARY PUBLIC'S SIGNATURE:<br><br><br>STATE OF HAWAI'I | MY COMMISSION EXPIRES: |
|---|---|---|

### ACKNOWLEDGMENT OF SERVICE

__Company policy they do not sign__
(signature of person served)                    (date)                    (time)

RG-AC-508 (10/19)                                                    RETURN AND ACKNOWLEDGMENT OF SERVICE   1C-P-022

# NOTICE OF ELECTRONIC FILING

**Electronically Filed
THIRD CIRCUIT
3CCV-22-0000355
23-MAR-2023
01:56 PM
Dkt. 10 NEF**

An electronic filing was submitted in Case Number 3CCV-22-0000355. You may review the filing through the Judiciary Electronic Filing System. Please monitor your email for future notifications.

|  |  |
|---|---|
| **Case ID:** | 3CCV-22-0000355 |
| **Title:** | GERALDO W. SCATENA v. BOEHRINGER INGELHEIM PHARMACEUTICALS, INC., a Delaware corporation PFIZER, INC., a Delaware corporation GLAXOSIMITH KLINE, LLC., a Delaware company, COSTCO WHOLESALE CORPORATION, a Washington corporation RITE AID CORPORATION, a Pennsylvania corporation |
| **Filing Date / Time:** | THURSDAY, MARCH 23, 2023 01:56:37 PM |
| **Filing Parties:** | Michael O'connor |
| **Case Type:** | Circuit Court Civil |
| **Lead Document(s):** | |
| **Supporting Document(s):** | 9-Return of Service or Summons |
| **Document Name:** | 9-Return of Service |

If the filing noted above includes a document, this Notice of Electronic Filing is service of the document under the Hawai`i Electronic Filing and Service Rules.

---

This notification is being electronically mailed to:

Michael F. O'connor *( mfoconnor@ollon.com )*

The following parties need to be conventionally served:

Rite Aid Corporation

Costco Wholesale Corporation

Glaxosmith Kline, LLC.

Pfizer, Inc.

Boehringer Ingelheim Pharmaceuticals

| STATE OF HAWAI'I<br>CIRCUIT COURT OF THE<br>THIRD CIRCUIT | RETURN AND ACKNOWLEDGMENT<br>OF SERVICE | **Electronically Filed<br>THIRD CIRCUIT<br>3CCV-22-0000355<br>23-MAR-2023<br>01:58 PM<br>Dkt. 11 ROS** |
|---|---|---|

CASE NUMBER

### 3CCV-22-0000355

CASE NAME

GERALDO W. SCATENA,
          Plaintiff,

vs.

BOEHRINGER INGELHEIM PHARMACEUTICALS, INC., a Delaware corporation et al.,

          Defendants,

DOCUMENTS SERVED:  Notice of Case Not Accepted into the CAAP; Complaints/Summons; Civil Information Sheet

I, Sheriff/Police Officer of the State of Hawai'i do hereby certify that I received a certified copy of the documents listed above and that I served the same on   PFIZER, INC., a Delaware Corporation

on  3/23/2023            at    0925 HRS.         (name of party)    at  900 Fort St. Mall
      (date)                            (time)
      #1680 Hon. Hi. 96813                    within the State of Hawai'i as follows:
              (address)

☐ PERSONAL: By delivering to and leaving with _____ , personally.

☐ SUBSTITUTE: [HRCP 4(d) (1) (A)] After due and diligent search and inquiry, I served above-named defendant through _____ , a person of suitable age and discretion then residing at said party's usual place of abode, since the defendant could not be found.

☐ SUBSTITUTE: [HRCP 4(d) (1) (B)] I served above-named defendant through _____ , authorized agent to receive service of process for said defendant.

☒ BUSINESS/CORPORATION/GOVERNMENTAL ENTITY: On PFIZER, INC., a Delaware
                                                    (name of business/corp/entity)
  Corporation        by serving through   CT Corporation System, / Jo ~~Byrne~~ ,
                                                    (name of person served)
  Byrne         , who is the    Agent         and authorized agent
                                                    (position/title)
  of said Business/Corporation/Governmental Entity.

☐ GARNISHMENT: I served _____ through _____
                                              (name of garnishee)
  _____ who is authorized to accept service for the above-named garnishee.
              (name of person served)

☐ NOT FOUND: After due and diligent search and inquiry, I am unable to find _____ ,
                                                    (name of party)

| STATE OF HAWAI'I<br>CIRCUIT COURT OF THE<br>_____ CIRCUIT | RETURN AND ACKNOWLEDGMENT OF SERVICE<br>(Page 2) |
|---|---|

CASE NUMBER

CASE NAME

Attorney (Name, I.D. No., Address, Phone)

| Date:<br>3/23/2023 | Sheriff/Police Officer (type or print)<br>RICHARD K. MITCHELL | Signature |
|---|---|---|

| SUBSCRIBED AND SWORN<br>TO BEFORE ME THIS DATE:<br><br>IN _____, HAWAI'I | NOTARY PUBLIC'S SIGNATURE:<br><br>STATE OF HAWAI'I | MY COMMISSION EXPIRES: |
|---|---|---|

## ACKNOWLEDGMENT OF SERVICE

Company policy they do not sign
(signature of person served)          (date)          (time)

# NOTICE OF ELECTRONIC FILING

**Electronically Filed
THIRD CIRCUIT
3CCV-22-0000355
23-MAR-2023
01:58 PM
Dkt. 12 NEF**

An electronic filing was submitted in Case Number 3CCV-22-0000355. You may review the filing through the Judiciary Electronic Filing System. Please monitor your email for future notifications.

|  |  |
|---|---|
| **Case ID:** | 3CCV-22-0000355 |
| **Title:** | GERALDO W. SCATENA v. BOEHRINGER INGELHEIM PHARMACEUTICALS, INC., a Delaware corporation PFIZER, INC., a Delaware corporation GLAXOSIMITH KLINE, LLC., a Delaware company, COSTCO WHOLESALE CORPORATION, a Washington corporation RITE AID CORPORATION, a Pennsylvania corporation |
| **Filing Date / Time:** | THURSDAY, MARCH 23, 2023 01:58:49 PM |
| **Filing Parties:** | Michael O'connor |
| **Case Type:** | Circuit Court Civil |
| **Lead Document(s):** | |
| **Supporting Document(s):** | 11-Return of Service or Summons |
| **Document Name:** | 11-Return of Service |

If the filing noted above includes a document, this Notice of Electronic Filing is service of the document under the Hawai`i Electronic Filing and Service Rules.

---

This notification is being electronically mailed to:

Michael F. O'connor *( mfoconnor@ollon.com )*

The following parties need to be conventionally served:

Rite Aid Corporation

Costco Wholesale Corporation

Glaxosmith Kline, LLC.

Pfizer, Inc.

Boehringer Ingelheim Pharmaceuticals